CHRYSLER CREDIT CORPORATION, Plaintiff-Appellee, v. JAMES KOONTZ, Defendant-Appellant.

Fifth District    No. 5—95—0191

Opinion filed February 16, 1996.

H. Carl Runge, Jr., of Law Offices of H. Carl Runge, Jr., Ltd., of Collinsville, for appellant.

1080

Nelson L. Mitten, of Riezman & Blitz, P.C., of St. Louis, Missouri, for appellee.

JUSTICE MAAG delivered the opinion of the court:

Defendant, James Koontz, appeals from a deficiency judgment entered against him and in favor of the plaintiff, Chrysler Credit Corporation (Chrysler), in the amount of $4,439.92.

Koontz entered into an agreement with Chrysler to purchase a 1988 Plymouth Sundance in exchange for 60 monthly payments of $185.92. Koontz defaulted on the contract in early 1991. Chrysler notified Koontz that it would repossess the vehicle if Koontz did not make up the missed payments. Koontz notified Chrysler that he would make every effort to catch up on the payments, that he did not want the vehicle to be repossessed, and that Chrysler was not to enter onto his private property to repossess the car.

On the night of April 21, 1991, Chrysler sent the M&M Agency to repossess the vehicle pursuant to section 9—503 of the Uniform Commercial Code (the self-help repossession statute). (810 ILCS 5/9—503 (West 1994).) The vehicle was parked outside of Koontz's home in his front yard when he heard the repossession in progress. Koontz, who was in his underwear, rushed outside and hollered, "Don't take it," to the repossessor. The repossessor did not respond and proceeded to take the vehicle.

Chrysler sold the vehicle and filed a complaint against Koontz seeking a deficiency judgment for the balance due on the loan. Koontz filed an affirmative defense alleging that Chrysler's repossession of the vehicle breached the peace, the remedy for which includes a denial of a deficiency judgment to the secured party.

The case was tried before the circuit court of Bond County in a bench trial on February 8, 1995. On March 6, 1995, the trial court entered its order finding "that Chrysler Credit Corporation's actions to repossess said vehicle did not constitute a breach of the peace." The court then entered the deficiency judgment on behalf of Chrysler in the amount of $4,439.92 plus costs and attorney fees of $950. Koontz appeals from this judgment.

Koontz raises only a single issue on appeal. He contends that the trial court erred in finding that Chrysler's repossession did not breach the peace because there was evidence that Koontz made an unequivocal oral protest to the repossession of his vehicle at the time of repossession. Koontz argues that when the vehicle was taken despite his protest, "Don't take it," a breach of the peace occurred, citing *Dixon v. Ford Motor Credit Co.* (1979), 72 Ill. App. 3d 983, 391 N.E.2d 493. In *Dixon*, the court, relying upon White and Summers, Uniform

Commercial Code § 26—6, at 972, stated that "[w]hen a creditor repossesses in disregard of the debtor's unequivocal oral protest, the repossession may be found to be in breach of the peace." *Dixon*, 72 Ill. App. 3d at 988, 391 N.E.2d at 497.

Chrysler contends that Koontz's oral protest did not breach the peace because "none of the elements of violence indicated in the decisions cited by the Defendant exists [*sic*] in this case." Chrysler argues by implication that without an element of violence there can be no breach of the peace. Chrysler also argues that if we find that an oral protest without an element of violence constitutes a breach of the peace, then we would be narrowing the self-help repossession statute to the point that it would be useless to a secured creditor.

■ We recognize that the self-help repossession statute extends a conditional self-help privilege to secured parties; however, we must apply the statute in a way that reduces the risk to the public associated with extrajudicial conflict resolution. It is apparent that the self-help remedy is efficient for secured creditors and results in reduced costs for both creditors and debtors. Efficiency and reduced litigation costs are desirable. Still, a debtor's private property interests and society's interest in tranquility must also be protected.

Because self-help repossession is statutory, we look to the language of section 9—503 to establish the parameters of the remedy that the statute offers to secured parties who seek to repossess collateral without judicial process. The statute provides in pertinent part: "Unless otherwise agreed a secured party has on default the right to take possession of the collateral. In taking possession a secured party may proceed without judicial process if this can be done without breach of the peace or may proceed by action." (810 ILCS 5/9—503 (West 1994).) The key to whether a self-help repossession is permissible depends on whether the peace has been or is likely to be breached.

■ Section 9—503 does not define breach of the peace, and the phrase "breach of the peace" has never had a precise meaning in relation to specific conduct. The phrase has been construed on several occasions. In *Cantwell v. Connecticut* (1940), 310 U.S. 296, 308, 84 L. Ed. 1213, 1220, 60 S. Ct. 900, 905, the court stated: "The offense known as breach of the public peace embraces a great variety of conduct destroying or menacing public order and tranquility. It includes not only violent acts but acts and words likely to produce violence in others." In *Leavitt v. Charles R. Hearn, Inc.* (1974), 19 Ill. App. 3d 980, 312 N.E.2d 806, we noted that implied force may also constitute a beach of the peace. (*Leavitt*, 19 Ill. App. 3d at 986, 312 N.E.2d at 811, citing *Atkinson v. Lester* (1837), 2 Ill. 407.) The Re-

statement (Second) of Torts § 116 (1965), provides that "[a] breach of the peace is a public offense done by violence, or by one causing or likely to cause an immediate disturbance of public order." Threats and epithets directed at another may or may not constitute a breach of the peace, depending upon the likelihood that a disturbance will follow.

We therefore conclude that the term "breach of the peace" connotes conduct which incites or is likely to incite immediate public turbulence, or which leads to or is likely to lead to an immediate loss of public order and tranquility. Violent conduct is not a necessary element. The probability of violence at the time of or immediately prior to the repossession is sufficient. We now turn to Koontz's contention that Chrysler's repossession and the events at the time of and immediately prior to the repossession breached the peace.

■ After a thorough examination of the record, we find no abuse of discretion on the part of the trial court in ruling that Chrysler's repossession did not breach the peace. Whether a given act provokes a breach of the peace depends upon the accompanying circumstances of each particular case. In this case, Koontz testified that he only yelled, "Don't take it," and that the repossessor made no verbal or physical response. He also testified that although he was close enough to the repossessor to run over and get into a fight, he elected not to because he was in his underwear. Furthermore, there was no evidence in the record that Koontz implied violence at the time of or immediately prior to the repossession by holding a weapon, clenching a fist, or even vehemently arguing toe-to-toe with the repossessor so that a reasonable repossessor would understand that violence was likely to ensue if he continued with the vehicle repossession. We think that the evidence, viewed as a whole, could lead a reasonable fact finder to determine that the circumstances of the repossession did not amount to a breach of the peace.

We note that to rule otherwise would be to invite the ridiculous situation whereby a debtor could avoid a deficiency judgment by merely stepping out of his house and yelling once at a nonresponsive repossessor. Such a narrow definition of the conduct necessary to breach the peace would, we think, render the self-help repossession statute useless. Therefore, we reject Koontz's invitation to define "an unequivocal oral protest," without more, as a breach of the peace.

■ Koontz also argues that Chrysler breached the peace by repossessing the vehicle under circumstances which would constitute a Class C misdemeanor, criminal trespass to real property, pursuant to section 21—3 of the Criminal Code of 1961. (720 ILCS 5/21—3 (West 1994).) Koontz testified that he notified Chrysler prior to the date of

the repossession that Chrysler did not have permission to enter onto his real property. Criminal trespass occurs when some person "enters upon the land *** of another, after receiving, prior to such entry, notice from the owner or occupant that such entry is forbidden." (720 ILCS 5/21—3 (West 1994).) Thus, Koontz argues that since Chrysler's actions potentially could make it liable for criminal trespass, those same actions at a minimum breached the peace.

This is an issue of first impression in Illinois, so we turn to other jurisdictions for guidance. A review of the law in other jurisdictions reveals that, in general, a mere trespass, standing alone, does not automatically constitute a breach of the peace. (See *Madden v. Deere Credit Services, Inc.* (Ala. 1992), 598 So. 2d 860; *Salisbury Livestock Co. v. Colorado Central Credit Union* (Wyo. 1990), 793 P.2d 470.) It is generally held that "simply going upon the private driveway of the debtor and taking possession of secured collateral, without more, does not constitute a breach of the peace." (*Hester v. Bandy* (Miss. 1993), 627 So. 2d 833, 840; see also *Oaklawn Bank v. Baldwin* (Ark. 1986), 289 Ark. 79, 81, 709 S.W.2d 91, 91 (where creditor's agent repossessed vehicle from debtor's driveway without entering "any gates, doors, or other barricades to reach the truck," no breach of the peace occurred); *Gregory v. First National Bank* (1965), 241 Or. 397, 406 P.2d 156 (repossession of car from debtor's real property was not trespass because creditor had privilege to enter and take possession); *Raffa v. Dania Bank* (Fla. App. 1975), 321 So. 2d 83, 85 (where vehicle was parked partially under an enclosed carport in debtor's driveway, no breach of peace occurred, it being "undisputed that no door, not even one to a garage, on the [debtor's] premises was opened, much less broken"); *Census Federal Credit Union v. Wann* (Ind. App. 1980), 403 N.E.2d 348, 351 (although a "secured party may not *** break into or enter into homes or other buildings or enclosed spaces," repossession of vehicle from parking lot of apartment building where debtor lived did not constitute breach of the peace); *Ragde v. Peoples Bank* (1989), 53 Wash. App. 173, 175, 767 P.2d 949, 951 (repossession of automobile from debtor's driveway without "enter[ing] any gates, doors, or other barricades" was accomplished without breaching the peace).) The possible factual situations are endless, thus leading to the need for a case-by-case analysis.

In making this analysis, certain principles are clear and must be considered. When the collateral is located inside a fence or is otherwise enclosed, the secured creditor's privilege is considerably abridged. (See *Rogers v. Allis-Chalmers Credit Corp.* (8th Cir. 1982), 679 F.2d 138 (entry onto property of a third party through "at least one gate" to repossess machinery created issue of fact whether breach

of peace occurred).) The creditor's privilege is most severely restricted when repossession can only be accomplished by the actual breaking or destruction of barriers designed to exclude trespassers. (See *Laurel Coal Co. v. Walter E. Heller & Co.* (W.D. Pa. 1982), 539 F. Supp. 1006, 1007 (creditor's "cutting a chain used to lock a fence which enclosed the [debtor's] property" to gain access to collateral constituted a breach of the peace within the meaning of the self-help repossession statute); *Bloomquist v. First National Bank* (Minn. App. 1985), 378 N.W.2d 81 (removing a cracked window pane to gain entry constituted a breach of the peace as a matter of law).) These cases implicitly acknowledge that the likelihood of a breach of the peace increases in proportion to the efforts of the debtor to prevent unauthorized intrusions and the creditor's conduct in defiance of those efforts. *Cf. Madden v. Deere Credit Services, Inc.* (Ala. 1992), 598 So. 2d 860.

In this case, Koontz testified that he notified Chrysler prior to the repossession that it was not permitted to enter onto his property. He also testified that he pulled his vehicle into his front yard so that he could see it by the light of the front porch. This testimony was uncontroverted. There was no testimony, however, that Chrysler entered through any barricade or did anything other than simply enter onto the property and drive the car away. Viewing this evidence in the light most favorable to the prevailing party, we believe that Chrysler's entry upon the private real property of Koontz and taking possession of the secured collateral, without more, did not constitute a breach of the peace. Chrysler enjoyed a limited privilege to enter Koontz's property for the sole and exclusive purpose of effecting the repossession. So long as the entry was limited in purpose (repossession), and so long as no gates, barricades, doors, enclosures, buildings, or chains were breached or cut, no breach of the peace occurred by virtue of the entry onto his property.

Finally, Chrysler presents an argument that the repossessor in this case was not an agent, but only an independent contractor, and thus Chrysler should not be held liable for a possible breach of the peace. Based upon our disposition of this matter, we need not address this issue. By refusing to address this issue we are not expressing any opinion as to whether the repossessor was an independent contractor or Chrysler's agent.

■ An order granting a deficiency judgment will be reversed on review only if the decision is found to have been against the manifest weight of the evidence or where the trial court committed an error of law. (*First National Bank v. Wolfe* (1985), 137 Ill. App. 3d 929, 932, 485 N.E.2d 46, 48.) Weighing the evidence, determining the credibility of the witnesses, and resolving conflicts are functions of the

trier of fact with which we will not interfere. (*Swader v. Golden Rule Insurance Co.* (1990), 203 Ill. App. 3d 697, 702, 561 N.E.2d 99, 102, *appeal denied* (1990), 135 Ill. 2d 567, 564 N.E.2d 848.) The decision of the trial court was not against the manifest weight of the evidence, nor did the court commit an error of law.

For the foregoing reasons, we affirm the judgment of the circuit court of Bond County.

Affirmed.

CHAPMAN and KUEHN, JJ., concur.