# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 99-2007

_____

| | | |
|---|---|---|
| Kerry A. Clarin; Colleen V. Clarin, | * | |
| | * | |
| Appellants, | * | |
| | * | |
| v. | * | Appeal from the United States |
| | * | District Court for the District of |
| Minnesota Repossessors, Inc., | * | Minnesota. |
| a Minnesota Corporation, | * | |
| | * | |
| Appellee. | * | |

_____

Submitted:  October 22, 1999

Filed:  December 3, 1999

_____

Before BOWMAN, JOHN R. GIBSON, and BEAM, Circuit Judges.

_____

BEAM, Circuit Judge.

Colleen and Kerry Clarin brought this action for wrongful repossession in violation of the Fair Debt Collection Practices Act[1] and the Minnesota Uniform

_____

[1] 15 U.S.C. § 1692f(6).

Commercial Code (UCC).[2]   They now appeal the grant of summary judgment[3] in favor of Minnesota Repossessors, Inc.   We affirm.

## I.   BACKGROUND

The Clarins obtained a secured consumer installment loan from Norwest Bank Minnesota (Norwest) in March 1995.   Their two automobiles, a 1994 Chevrolet Corsica and a 1989 Chevrolet Cavalier, were given as security for the loan.   The Clarins began to have trouble making payments in September 1996.   They continued to miss payments through the following January.   On January 27, 1997, Norwest sent the Clarins a "strict compliance letter" requiring them to pay the total past due amount within ten days.   The letter specified that if the Clarins did not pay the past due amount, the bank could exercise its rights under the loan agreement including repossession.   The Clarins failed to comply with the strict compliance letter.[4]   Norwest then retained Minnesota Repossessors, Inc., to carry out the repossession of the Clarins's 1994 Chevrolet Corsica.

On February 28, 1997, at approximately 3:00 p.m., one of Ms. Clarin's co-workers saw that Ms. Clarin's car was about to be towed from the company parking lot.[5]   Ms. Clarin ran outside, verbally objecting to the repossession.   When Ms. Clarin

[2]Minn. Stat. § 336.9-503 (1984) (UCC).

[3]The Honorable Michael J. Davis, United States District Judge for the District of Minnesota.

[4]The Clarins contend that they contacted Norwest after receiving the strict compliance letter, arranged to pay the past due amounts, and made a payment that reflected that arrangement.  Norwest, however, claims to have no documentation of the arrangement.  This factual dispute has no bearing on our resolution of this case since it is undisputed that the Clarins failed to comply with the terms of the loan agreement.

[5]Ms. Clarin stated that she considers the lot to be public in her deposition.

reached her car, two men employed by Minnesota Repossessors were preparing it for towing. At that point, Ms. Clarin pleaded with the men not to take her car, and told them they had no right to take it because she had made an arrangement with Norwest. She also requested that they wait while she called Norwest and asked that someone call the police. The repossessors waited while she called Norwest and they called the police for her. When Ms. Clarin returned to the car, she removed her personal belongings with the help of a co-worker. Minnesota Repossessors then provided her with a repossession order. Ms. Clarin returned to the office building and telephoned the number provided on the repossession order. When she returned, she did not further protest the repossession and the car was towed.

The Clarins filed an action in district court for wrongful repossession under the UCC and for violation of the Fair Debt Collection Practice Act. Both parties moved for summary judgement, and the district court granted summary judgment to Minnesota Repossessors. The district court found that there was no breach of the peace under the UCC, that Minnesota Repossessors had a right to the possession of the car, and the Fair Debt Collection Practices Act was not violated. The Clarins appeal, contending that the repossession in the face of Ms. Clarin's oral protests was a breach of the peace violating the UCC. Additionally, they argue that Minnesota Repossessors did not have the right to possess the Clarins's car because of the breach of the peace causing a violation of the Fair Debt Collection Practices Act.[6]

---

[6]Minnesota Repossessors made a motion to supplement the record. We grant that motion, but note that the supplemental information is not relevant to our decision.

## II.  DISCUSSION

We review the district court's summary judgment decision de novo.  See <u>Artis v. Francis Howell N. Band Booster Ass'n, Inc.</u>, 161 F.3d 1178, 1180 (8th Cir. 1998). Summary judgment is proper if, viewing the facts in the light most favorable to the nonmoving party, there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law.  Fed. R. Civ. P. 56(c).  The moving party has the burden to show that there is no genuine issue of material fact.  See <u>Celotex v. Catrett</u>, 477 U.S. 317, 323 (1986).  In order to defeat a motion for summary judgment, the nonmoving party must do more than rest on its pleadings, it must demonstrate "specific facts showing that there is a genuine issue for trial."  Fed. R. Civ. P. 56(e).

Under the Minnesota UCC, a secured creditor may utilize self-help repossession upon default if it can be done "without breach of the peace."  Minn. Stat. § 336.9-503. Unfortunately, the UCC does not provide a definition of "breach of the peace."  <u>See</u> Minn. Stat. § 336.9-503.  Similarly, Minnesota courts have not addressed the issue of whether an oral protest constitutes a breach of the peace.

In order to determine if there has been a breach of the peace, we must consider the objectives of the statute.  There are three general objectives for the section 9-503: "(1) to benefit creditors in permitting them to realize collateral without having to resort to judicial process; (2) to benefit debtors in general by making credit available at lower costs; and (3) to support a public policy discouraging extrajudicial acts by citizens when those acts are fraught with the likelihood of resulting violence."  <u>Williams v. Ford Motor Credit Co.</u>, 674 F.2d 717, 719 n.4 (8th Cir. 1982) (internal citations omitted) (discussing the Arkansas UCC).  Because these objectives represent conflicting interests of both parties and of the public, we must balance these goals.

Courts are divided on the issue of whether an unequivocal oral protest amounts to a breach of the peace. <u>Compare</u> <u>Rainwater v. Rx Med. Serv. Corp.</u>, 30 U.C.C. Rep. Serv. 2d (CBC) 983, 991-92 (E.D. Cal. 1995) (oral protest insufficient for breach of

the peace); <u>Chrysler Credit Corp. v. Koontz</u>, 661 N.E.2d 1171, 1173-74 (Ill. App. Ct. 1996) (yelling "Don't take it" is insufficient); <u>with</u> <u>Fulton v. Anchor Sav. Bank, F.S.B.</u>, 452 S.E.2d 208, 213 (Ga. Ct. App. 1994) (a breach of the peace is created by an unequivocal oral protest); <u>Census Fed. Credit Union v. Wann</u>, 403 N.E.2d 348, 352 (Ind. Ct. App. 1980) (in the face of an oral protest the repossessing creditor must desist);  <u>Hollibush v. Ford Motor Credit Co.</u>, 508 N.W.2d 449, 453 (Wis. Ct. App. 1993) (same).  Five factors are relevant in balancing the interests and deciding if the repossessors conduct was reasonable.  <u>See</u> <u>Davenport v. Chrysler Credit Corp.</u>, 818 S.W.2d  23, 29 (Tenn. Ct. App. 1991) The factors are: "(1) where the repossession took place, (2) the debtor's express or constructive consent, (3) the reactions of third parties, (4) the type of premises entered, and (5) the creditor's use of deception."  <u>Id.</u> (citing 2 J. White & R. Summers, <u>Uniform Commercial Code</u> § 27-6, at 575-76 (3d ed. 1988)).

We find that these factors weigh against a breach of the peace in this case.  First, the repossession took place in a public parking lot. As a repossession moves farther from the debtor's residence, the argument for a breach of the peace becomes more tenuous.  <u>See</u> 4 James J. White & Robert S. Summers, <u>Uniform Commercial Code</u> § 34-7, at 417 (4th ed. 1995).  Although Ms. Clarin never gave her express consent,  she was provided the opportunity to contact Norwest, the police, and the repossession company.  After making these calls, with Minnesota Repossessors waiting more than an hour, she no longer protested the repossession.  We construe Ms. Clarin's actions as a constructive consent.  Although third parties were present and watching from the offices, only one of them intervened and only to help Ms. Clarin remove her personal belongings and to protest the repossession to the man in charge.  These actions were not disruptive.  Finally, Minnesota Repossessors did not use trickery or deception in the repossession.

In light of this factual situation, we find that Ms. Clarin's protests did not rise to a level of a breach of the peace.  We believe that "to rule otherwise would be to invite

the ridiculous situation whereby a debtor could avoid a [lawful self-help repossession] by merely stepping out of his house and yelling once at a nonresponsive repossessor." <u>Chrysler Credit</u>, 661 N.E.2d at 1174.

Because we find no breach of the peace under the Minnesota UCC, the Clarins's Fair Debt Collection Practices Act claim fails as well. The Fair Debt Collection Practices Act requires a wrongful possession for a claim to be maintained. <u>See</u> 15 U.S.C. § 1692f(6). Minnesota Repossessors had a present right of possession of the car under the Act. <u>See</u> <u>Clark v. Auto Recovery Bureau Conn., Inc.</u>, 889 F. Supp. 543, 547 (D. Conn. 1994); <u>see also</u> Barkley Clark, <u>The Law of Secured Transactions under the Uniform Commercial Code</u> ¶ 4.05[2][b] (Rev. ed. Supp. 1997). Accordingly, the Fair Debt Collection Practices Act claim fails.

We affirm the judgment of the district court.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.