THIRD DIVISION
July 18, 2007

No. 1-06-1234

| | | |
|---|---|---|
| MARIO PANTOJA-CAHUE, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellant, | ) | Cook County |
| | ) | |
| v. | ) | |
| | ) | |
| FORD MOTOR CREDIT COMPANY, | ) | |
| | ) | |
| Defendant-Appellee | ) | |
| | ) | |
| (Doe Repossession Company/Agent, | ) | Honorable |
| | ) | Jeffrey Lawrence, |
| Defendant). | ) | Judge Presiding. |

JUSTICE KARNEZIS delivered the opinion of the court:

Plaintiff Mario Pantoja-Cahue filed a six-count complaint seeking damages from defendant Ford Motor Credit Company for Ford's alleged breach of the peace and "illegal activities" in repossessing plaintiff's automobile from his locked garage. The trial court granted Ford's motion to dismiss four of the counts pursuant to section 2-615 of the Illinois Code of Civil Procedure (735 ILCS 5/2-615 (West 2004)). Plaintiff appeals, arguing the court erred in granting Ford's motion to dismiss because he sufficiently alleged Ford committed a breach of the peace when a repossession agent, at Ford's behest, broke into plaintiff's locked garage to take his vehicle in violation of

(1) sections 5/2A-108 and 2A-525 of the Illinois Uniform Commercial Code (the Code) (810 ILCS 5/2A-108, 2A-525 (West 2004)); (2) plaintiff's contract with Ford; and (3) section 2 of the Illinois Consumer Fraud and Deceptive Business Practices Act (Consumer Fraud Act) (815 ILCS 505/2 (West 2004)). He also argues he sufficiently alleged Ford ordered the repossession knowing that the issue of the vehicle's ownership was pending before a court, in violation of section 2 of the Consumer Fraud Act. We affirm in part, reverse in part and remand.

Background

In August 2000, plaintiff purchased a 2000 Ford Explorer from auto dealer Webb Ford. Plaintiff, a native Spanish speaker, negotiated the purchase with a Spanish-speaking salesperson at Webb. Plaintiff signed what he thought was a contract for the purchase and financing of the vehicle, with monthly installment payments to be made to Ford. The contract was in English. Some years later, plaintiff discovered the contract was actually a lease, not a purchase agreement. Plaintiff brought suit against Ford and Webb on August 22, 2003, alleging fraud. Ford brought a replevin action against plaintiff asserting plaintiff was in default on his obligations under the lease. In the late night/early morning hours of March 11-12, 2004, repossession agents entered plaintiff's locked garage and removed the car.

On May 18, 2004, the court dismissed plaintiff's claims against Ford without prejudice. On December 1, 2004, the court entered an order settling plaintiff's case against Webb. Pursuant to the settlement, Webb repurchased the car from Ford and

1-06-1234

tendered it back to plaintiff.

On May 17, 2005, plaintiff filed a complaint against Ford and "Doe Repossession Company/Agent," an as yet unknown repossession agent acting on Ford's behalf. On December 16, 2005, plaintiff filed the second amended complaint at issue here. Plaintiff sought damages for Ford and Doe's "unlawful activities surrounding the wrongful repossession of Plaintiff's vehicle." He alleged Ford and Doe's breaking into plaintiff's locked garage to effectuate the repossession and Ford's repossession of the vehicle knowing that title to the car was the subject of ongoing litigation variously violated section 2A-525(3) of the Code (count I against Ford), the Fair Debt Collection Practices Act (15 U.S.C. § 1692 *et seq.* (2000)) (count II against Doe), the unlawful trespass statute (count III against Ford and Doe), section 2 of the Consumer Fraud Act (count IV against Ford and Doe), Ford's contract with plaintiff (count V against Ford) and section 2A-108 of the Code (count VI against Ford and Doe).

Ford filed a section 2-615 motion to dismiss counts I, IV, V and VI. The court granted the motion with prejudice on April 10, 2006. The court made its order final and appealable pursuant to Supreme Court Rule 304(a) (210 Ill. 2d R. 304(a)) and granted plaintiff's request to stay all pending matters pending appeal of its decision.[1] Plaintiff

---

[1] Stayed are plaintiff's count against Doe alleging a violation of the Fair Debt Collections Act and its count against Ford and Doe alleging unlawful trespass.

timely filed his notice of appeal on April 26, 2006, arguing the court erred in granting Ford's motion to dismiss pursuant to section 2-615.

## Analysis

A motion to dismiss filed pursuant to section 2-615 is based on the pleadings rather than the underlying facts. *Neppl v. Murphy*, 316 Ill. App. 3d 581, 584, 736 N.E.2d 1174, 1178 (2000). It admits all well-pleaded facts appearing on the face of the complaint and attacks the legal sufficiency of the complaint, alleging only defects on the face of the complaint. *Neppl*, 316 Ill. App. 3d at 584, 736 N.E.2d at 1178; *Elson v. State Farm Fire & Casualty Co.*, 295 Ill. App. 3d 1, 6, 691 N.E.2d 807, 811 (1998). Viewing the complaint in the light most favorable to the nonmoving party, here plaintiff, we must determine whether it alleges sufficient facts to state a cause of action upon which relief may be granted. *Ziemba v. Mierzwa*, 142 Ill. 2d 42, 46-47, 566 N.E.2d 1365, 1366 (1991). In making that determination, we must take as true all well-pleaded facts of the complaint, draw all reasonable inferences therefrom in favor of the nonmoving party, and disregard mere conclusions of law unsupported by specific factual allegations. *Krueger v. Lewis*, 342 Ill. App. 3d 467, 470, 794 N.E.2d 970, 972 (2003); *Ziemba*, 142 Ill. 2d at 47, 566 N.E.2d at 1366. We do not consider the merits of the case. *Elson*, 295 Ill. App. 3d at 5, 691 N.E.2d at 811. Our standard of review is *de novo*. *Neppl*, 316 Ill. App. 3d at 583, 736 N.E.2d at 1178.

## Uniform Commercial Code Section 2A-525(3)

Plaintiff first argues the court erred in dismissing count I of his complaint for

4

failure to state a cause of action for Ford's violation of section 2A-525(3) of the Code. In count I, plaintiff alleged "a breach of the peace occurred as [Ford]'s repossession agent broke into Plaintiff's locked garage in order to take the vehicle" and Ford's agent "repossessed the subject vehicle by, among other things, breaking into Plaintiff's locked garage and causing substantial damage to Plaintiff's personal property in violation of [section 2A-525(3)]." Section 2A-525, titled "lessor's right to possession of goods," provides in relevant part:

"(2) After a default by the lessee under the lease contract *** or, if agreed, after other default by the lessee, the lessor has the right to take possession of the goods. * * *

(3) The lessor *may proceed under subsection (2) without judicial process if it can be done without breach of the peace* or the lessor may proceed by action." (Emphasis added.) 810 ILCS 5/2A-525(2), (3) (West 2004).

Pursuant to section 2A-525(2), upon a lessee's default, a lessor has the right to repossess the leased goods in one of two ways: by using the judicial process or, if repossession could be accomplished without a breach of the peace, by self-help. 810 ILCS 5/2A-525(3). "If a breach of the peace is likely, a properly instituted civil action is the appropriate remedy." *People v. Sumner*, 107 Ill. App. 3d 368, 369 n.1, 437 N.E.2d 786, 787 n.1 (1982) (interpreting the term "breach of the peace" in the context of section 9-503 of the Code, which provides for the same self-help repossession as section 2A-525 but for secured creditors rather than lessors).

Taking plaintiff's well-pleaded allegations as true, Ford resorted to self-help, by employing an agent to repossess the car and Ford's agent broke into plaintiff's locked garage to effectuate the repossession. Although plaintiff's count I allegations are minimal, they are sufficient to plead a cause of action for a violation of section 2A-525(3) if breaking into a garage to repossess a car is, as plaintiff alleged, a breach of the peace. Accordingly, the question here is whether breaking into a locked garage to effectuate a repossession is a breach of the peace in violation of section 2A-525(3).

There are no Illinois cases analyzing the meaning of the term "breach of the peace" as used in the lessor repossession context in section 2A-525(3). However, there are a few Illinois cases analyzing the term as used in section 9-503 of the Code (810 ILCS 5/9-503 (West 2000) (now 810 ILCS 5/9-609 (West 2004), eff. July 1, 2001)), which contains a similar provision providing that a secured creditor may, upon default by a debtor, repossess its collateral either "(1) pursuant to judicial process; or (2) without judicial process, if it proceeds without breach of the peace." The seminal case, and the only one of any use in resolving the issue, is *Chrysler Credit Corp. v. Koontz*, 277 Ill. App. 3d 1078, 661 N.E.2d 1171 (1996).[2]

---

[2] The other Illinois cases applying section 9-503 are of limited assistance. Most concern section 9-503 only peripherally and do not analyze the "breach of the peace" term. The two that do somewhat analyze the term, *Johnson v. Grossinger Motorcorp., Inc.*, 324 Ill. App. 3d 354, 753 N.E.2d 431 (2001), and *Valentino v. Glendale Nissan,*

In *Koontz*, Chrysler, the defendant creditor, sent repossession agents to repossess the plaintiff's car after the plaintiff defaulted on his payments. The car was parked in the plaintiff's front yard. The plaintiff heard the repossession in progress and ran outside in his underwear shouting "Don't take it" to the agents. *Koontz*, 277 Ill. App. 3d at 1080, 661 N.E.2d at 1173. The agents did not respond and proceeded to take the car. The plaintiff argued the repossession breached the peace and he was entitled to the statutory remedy for violation of section 9-503, denial of a deficiency judgment to the secured party, Chrysler.

The *Koontz* court held section 9-503 to be a "self-help repossession statute [that] extends a conditional self-help privilege." *Koontz*, 277 Ill. App. 3d at 1081, 661 N.E.2d at 1173. Courts should "apply the statute in a way that reduces the risk to the public associated with extrajudicial conflict resolution." *Koontz*, 277 Ill. App. 3d at

---

*Inc.*, 317 Ill. App. 3d 524, 740 N.E.2d 538 (2000), merely follow *Koontz* in holding that "breach of the peace" connotes conduct that incites or is likely to incite immediate public turbulence or leads to or is likely to lead to immediate loss of tranquility and public order. *Johnson*, 324 Ill. App. 3d at 364, 753 N.E.2d at 440 (plaintiff's verbal objection to repossession of his car from the parking lot at his place of employment was insufficient to show repossession was anything other than peaceful); *Valentino*, 317 Ill. App. 3d at 532, 740 N.E.2d at 543 (written objection to otherwise peaceful repossession did not give rise to breach of the peace).

1081, 661 N.E.2d at 1173. In applying section 9-503, protection of a debtor's private property rights and society's interest in tranquility must be balanced against the efficiency and reduced costs for both debtors and creditors if self help rather than judicial means is used to repossess collateral. *Koontz*, 277 Ill. App. 3d at 1081, 661 N.E.2d at 1173. "The key to whether a self-help repossession is permissible depends on whether the peace has been or is likely to be breached." *Koontz*, 277 Ill. App. 3d at 1081, 661 N.E.2d at 1173.

After a thorough analysis of the term "breach of the peace," the court concluded the term "connotes conduct which incites or is likely to incite immediate public turbulence, or which leads to or is likely to lead to an immediate loss of public order and tranquility. Violent conduct is not a necessary element. The probability of violence at the time of or immediately prior to the repossession is sufficient." *Koontz*, 277 Ill. App. 3d at 1082, 661 N.E.2d at 1173.

"Whether a given act provokes a breach of the peace depends on the accompanying circumstances of each particular case." *Koontz*, 277 Ill. App. 3d at 1082, 661 N.E.2d at 1174. Accordingly, after considering the circumstances evident from the record before it, the court found no evidence that any violence was implied immediately prior to or at the time of the repossession such that "a reasonable repossessor would understand that violence was likely to ensue if he continued with the vehicle repossession" and held the circumstances of the repossession did not amount to a breach the peace. *Koontz*, 277 Ill. App. 3d at 1082, 661 N.E.2d at 1174.

The court then considered the plaintiff's argument that Chrysler breached the peace by repossessing the car under circumstances constituting criminal trespass to property. Looking to cases in other jurisdictions, the court determined that, "in general, a mere trespass, standing alone, does not automatically constitute a breach of the peace." *Koontz*, 277 Ill. App. 3d at 1083, 661 N.E.2d at 1174, citing *Hester v. Bandy*, 627 So. 2d 833, 840 (Miss. 1993) (taking possession of car from private driveway does not, without more, constitute breach of the peace), *Oaklawn Bank v. Baldwin*, 289 Ark. 79, 81, 709 S.W.2d 91, 92 (1986) (no breach of the peace occurred where car repossessed from debtor's driveway without entering "any gates, doors, or other barricades to reach" car), *Raffa v. Dania Bank*, 321 So. 2d 83, 85 (Fla. Dist. App. 1975) (no breach of the peace occurred where car was parked partially under carport and undisputed that no door, "not even one to a garage," on the debtor's premises was opened, much less broken, to repossess the car), *Census Federal Credit Union v. Wann*, 403 N.E.2d 348 (Ind. App. 1980) (although secured party may not break into or enter homes or buildings or enclosed spaces to effectuate a repossession, repossession of vehicle from parking lot of debtor's apartment building was not breach of the peace), *Ragde v. Peoples Bank*, 53 Wash. App. 173, 767 P.2d 949 (1989) (repossession of car from debtor's driveway without entering any gates, doors or other barricades was accomplished without breach of the peace).

The court noted that, when the collateral to be repossessed "is located inside a fence or is otherwise enclosed, the secured creditor's privilege is considerably

9

abridged" and "[t]he creditor's privilege is most severely restricted when repossession can only be accomplished by the actual breaking or destruction of barriers designed to exclude trespassers." *Koontz*, 277 Ill. App. 3d at 1083-84, 661 N.E.2d at 1174-75, citing *Rogers v. Allis-Chalmers Credit Corp.*, 679 F.2d 138 (8th Cir. 1982) (entry onto third party's property through "at least one gate" to repossess machinery created question of fact whether breach of peace occurred), *Laurel Coal Co. v. Walter E. Heller & Co.*, 539 F. Supp. 1006 (W.D. Pa. 1982) (breach of peace occurred during repossession when creditor, to gain access to collateral, cut chain used to lock a fence enclosing the debtor's property), *Bloomquist v. First National Bank of Elk River*, 378 N.W.2d 81 (Minn. App. 1985) (removing cracked window pane to gain access constituted breach of the peace as a matter of law). The court held the cited cases "implicitly acknowledge that the likelihood of a breach of the peace increases in proportion to the efforts of the debtor to prevent unauthorized intrusions and the creditor's conduct in defiance of those efforts." *Koontz*, 277 Ill. App. 3d at 1084, 661 N.E.2d at 1175.

Although the evidence showed the plaintiff notified Chrysler prior to the repossession that it was not permitted onto his property, the court held Chrysler's entry onto the property to take the car did not constitute a breach of the peace because there was no evidence Chrysler entered through a barricade or did anything other than drive the car away. *Koontz*, 277 Ill. App. 3d at 1084, 661 N.E.2d at 1175. "Chrysler enjoyed a limited privilege to enter [the plaintiff's] property for the sole and exclusive purpose of

effectuating the repossession. So long as the entry was limited in purpose (repossession), and so long as no gates, barricades, doors, enclosures, buildings, or chains were breached or cut, no breach of the peace occurred by virtue of the entry onto his property." *Koontz*, 277 Ill. App. 3d at 1084, 661 N.E.2d at 1175.

*Koontz* did not concern a repossession effectuated, as here, by breaking into the debtor/lessee's property and some of its analysis is arguably, therefore, *dicta*. Nevertheless, the court's analysis of the term "breach of the peace" in a repossession context is a thorough examination of the issue and, having researched the issue in other jurisdictions, we come to essentially the same conclusion: where a repossession is effectuated by an actual breaking into the lessee/debtor's premises or breaching or cutting of chains, gates, barricades, doors or other barriers designed to exclude trespassers, the likelihood that a breach of the peace occurred is high.

*Davenport v. Chrysler Credit Corp.*, 818 S.W.2d 23, 30 (Tenn. App. 1991), a case analyzing Tennessee's version of section 9-503 (Tenn. Code Ann. §47-9-503 (1979) is particularly helpful, holding that " '[a] breach of the peace is almost certain to be found if the repossession is accompanied by the unauthorized entry into a closed or locked garage.' " *Davenport*, 818 S.W.2d at 30, quoting 2 J. White & R. Summers, Uniform Commercial Code §27-6, at 577 n.11 3d ed. 1988). This is so because "public policy favors peaceful, non-trespassory repossessions when the secured party has a free right of entry" and "forced entries onto the debtor's property or into the debtor's premises are viewed as seriously detrimental to the ordinary conduct of human affairs."

*Davenport*, 818 S.W.2d at 29. *Davenport* held that the creditor's repossession of a car by entering a closed garage and cutting a chain that would have prevented it from removing the car amounted to a breach of the peace, "[d]espite the absence of violence or physical confrontation" (because the debtor was not at home when the repossession occurred). *Davenport*, 818 S.W.2d at 30. *Davenport* recognized that the secured creditors' legitimate interest in obtaining possession of collateral without having to resort to expensive and cumbersome judicial procedures must be balanced against the debtors' legitimate interest in being free from unwarranted invasions of their property and privacy interests. *Davenport*, 818 S.W.2d at 30.

> "Repossession is a harsh procedure and is, essentially, a delegation of the State's exclusive prerogative to resolve disputes. Accordingly, the statutes governing the repossession of collateral should be construed in a way that prevents abuse and discourages illegal conduct which might otherwise go unchallenged because of the debtor's lack of knowledge of legally proper repossession techniques." *Davenport*, 818 S.W.2d at 30.

See also *Madden v. Deere Credit Services, Inc.*, 598 So. 2d 860 (Ala. 1992), relied on heavily by *Koontz*, wherein, after a detailed analysis of section 9-503 of the Alabama Commercial Code (Ala. Code §7-9-503 (West 1975)) and similar statutes in other jurisdictions and the reasons behind them, the court found itself "unable to conclude that the breaking of a lock to gain entrance to the premises on which collateral is located does not constitute a breach of the peace as a matter of law." *Madden*, 598

So. 2d at 867.

We agree with *Koontz*, *Davenport* and *Madden*'s analysis of the term "breach of the peace" in the context of repossession and hold, with regard to section 2A-525(3) of the Code, that breaking into a locked garage to effectuate a repossession may constitute a breach of the peace.

Here, plaintiff alleges more than simply a trespass. He alleges Ford, through Doe, broke into his garage to repossess the car. Given our determination that breaking into a locked garage to repossess a car may constitute a breach of the peace, plaintiff's allegation is sufficient to state a cause of action under section 2A-525(3) of the Code. The court erred in dismissing count I of plaintiff's second amended complaint and we remand for further proceedings.

Uniform Commercial Code Section 2A-108

In count VI, plaintiff alleged the lease agreement was unconscionable because it was formed in violation of section 2N of the Code (815 ILCS 505/2N (West 2004)). Plaintiff does not quote section 2N or explain how the agreement violates section 2N.[3]

---

[3] We presume plaintiff is referring to the following provision of section 2N:

> "If (i) a person conducts, in a language other than English, a retail transaction or negotiations related to a retail transaction resulting in a written contract and (ii) the retailer or an employee of the retailer acted as the consumer's interpreter in conducting the transaction or negotiations,

13

1-06-1234

Instead, he quotes section 2A-108 of the Code, as follows:

"(2) With respect to a consumer lease, if the court as a matter of law finds that a lease contract or any clause of a lease contract has been induced by unconscionable conduct or that unconscionable conduct has occurred in the collection of a claim arising from a lease contract, the court may grant appropriate relief.

(3) Before making a finding of unconscionability under subsection (1) or (2), the court, on its own motion or that of a party, shall afford the parties a reasonable opportunity to present evidence as to the setting, purpose, and effect of the lease contract or clause thereof, or of the conduct." 810 ILCS 5/2A-

the retailer must have the consumer sign the following form in the consumer's native language (except as provided in subsection (c)):

This retail transaction or these negotiations were conducted in (language), which is my native language. I voluntarily choose to have the retailer act as my interpreter during the negotiations. The obligations of the contract or other written agreement were explained to me in my native language. I understand the contract or other written agreement.

(signature of consumer) (signature of retailer)."

810 ILCS 505/2N(b) (West 2004).

14

108(2), (3).

He then, in "violation one" under count VI, alleges the lease was made in violation of section 2N because it was negotiated in Spanish but he was only given a copy of the contract in English; he could not read the contract and, as a result, Webb Ford was able to trick him into signing a lease, rather than a purchase agreement; such contract was induced by unconscionable conduct; and, because it was illegal, the contract was unenforceable.

This allegation is insufficient to state a cause of action against Ford under section 2A-108. Even taking as true plaintiff's allegation that Webb Ford tricked him into signing the lease agreement, this allegation is insufficient to state a cause of action against Ford for unconscionable conduct in violation of section 2A-108. First, Ford is an entirely different entity than Webb Ford and plaintiff does not assert otherwise. Nor does plaintiff assert that Webb Ford was acting as Ford's agent in inducing plaintiff to sign the lease. Plaintiff asserts no basis on which Ford can be found liable for something Webb Ford did. Second, there is no allegation as to how the contract violates section 2N, merely the legal conclusion that it does, as well as the unsupported legal conclusion that a violation of section 2N is necessarily unconscionable.

Plaintiff's count VI "violation two" is similarly deficient. Plaintiff alleges that Ford knew plaintiff had filed suit alleging the contract was unenforceable and, despite this knowledge, "effectuated a repossession of the subject vehicle, where such repossession involved unconscionable conduct, namely, a breach of the peace. As a

15

result, [Ford] committed unconscionable conduct in its collection of a claim arising from the lease agreement." Taking as true the assertion that Ford knew plaintiff was contesting the validity of the contract when it repossessed the car, we cannot determine how this fact is relevant to Ford's alleged unconscionable conduct in breaching the peace during the repossession. Ford had a statutory right to repossess the car upon default and plaintiff does not allege (explain) how or why performing such repossession with the knowledge that plaintiff had filed a suit contesting the lease agreement was unconscionable in the context of section 2A-108. Nor is there a well-pleaded allegation of why a "breach of the peace," presumably the breaking into the garage referred to elsewhere in the complaint, is to be considered unconscionable in the context of section 2A-108. The court did not err in dismissing count VI.

## Breach of Contract

Plaintiff asserts the court erred in dismissing count V for failing to state a cause of action for Ford's breach of contract. Pursuant to the lease agreement between plaintiff and Ford, Ford could "peacefully take" the car if plaintiff defaulted. In count V, plaintiff alleged Ford breached this agreement when it committed a breach of the peace by breaking into plaintiff's garage to take the car. Given our determination that breaking into a garage to repossess the car could be a breach of the peace, plaintiff's allegation that Ford breached the contract provision for peaceful retaking of the car by breaking into the garage is sufficient to plead a cause of action for breach of contract, if, indeed, a contract between the parties existed. However, nowhere in the second

amended complaint does plaintiff allege that a valid and enforceable contract existed between the parties. Plaintiff alleged he negotiated for the purchase of a car but actually signed a lease for the car and that the issue of who had superior rights to the car, necessarily under the contract, was in dispute when the repossession occurred. He referred to the "alleged" lease agreement and alleged he was the victim of fraud in signing the lease. Elsewhere in the complaint, he acknowledged filing suit alleging the contract was unenforceable. It can hardly be inferred from these allegations that plaintiff considered the lease to be a valid contract. Accordingly, given no well-pleaded allegations to the contrary, the logical inference is that there is no valid contract between the parties and Ford cannot be held liable for violating the terms of a contract that does not exist. The court did not err in dismissing count V of the second amended complaint.

Illinois Consumer Fraud Act

Plaintiff lastly asserts the court erred in dismissing count IV for failing to state a claim for Ford's violation of section 2 of the Consumer Fraud Act (the Act). Section 2 provides:

> "Unfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact, or the use or employment of any

practice described in Section 2 of the 'Uniform Deceptive Trade Practices Act', approved August 5, 1965, in the conduct of any trade or commerce are hereby declared unlawful whether any person has in fact been misled, deceived or damaged thereby. In construing this section consideration shall be given to the interpretations of the Federal Trade Commission and the federal courts relating to Section 5(a) of the Federal Trade Commission Act."  815 ILCS 505/2 (West 2004).

The Act is "a regulatory and remedial statute intended to protect consumers, borrowers, and business people against fraud, unfair methods of competition, and other unfair and deceptive business practices." *Robinson v. Toyota Motor Credit Corp.*, 201 Ill. 2d 403, 416-17, 775 N.E.2d 951, 960 (2002).  Section 10a of the act creates a remedy for those suffering damage as a result of a violation of the Act.  815 ILCS 505/10a(a) (West 2004); *Robinson*, 201 Ill. 2d at 417, 775 N.E.2d at 960.  Recovery under the Act may be had for unfair as well as deceptive conduct.  *Robinson*, 201 Ill. 2d at 417, 775 N.E.2d at 960.

In determining whether conduct or an action is unfair, we must consider whether the practice or action (1) offends public policy, (2) is immoral, unethical, oppressive or unscrupulous and (3) causes substantial injury to consumers.  *Robinson*, 201 Ill. 2d at 417-18, 775 N.E.2d at 961, citing *Federal Trade Comm'n v. Sperry & Hutchinson Co.*, 405 U.S. 233, 244 n.5, 31 L. Ed. 2d 170, 179 n.5, 92 S. Ct. 898, 905 n.5 (1972).  The conduct "must violate public policy, be so oppressive as to leave the consumer with

little alternative except to submit to it, and injure the consumer." *Robinson*, 201 Ill. 2d at 418, 775 N.E.2d at 961, citing *Saunders v. Michigan Avenue National Bank*, 278 Ill. App. 3d 307, 313, 662 N.E.2d 602 (1996), citing *Sperry*, 405 U.S. at 244 n.5, 31 L. Ed. 2d at 179 n.5, 92 S. Ct. at 905 n.5. All three criteria need not be satisfied to support a finding of unfairness; rather, an action may be unfair because of the degree to which it meets a single criteria or because it meets all three to a lesser extent. *Robinson*, 201 Ill. 2d at 418, 775 N.E.2d at 961. A complaint stating a claim under the Act "must state with particularity and specificity the deceptive [unfair] manner of defendant's acts or practices, and the failure to make such averments requires the dismissal of the complaint." *Robinson*, 201 Ill. 2d at 419, 775 N.E.2d at 961.

In count IV, plaintiff alleged Ford's repossession of the car was an unfair act in violation of section 2 because (1) it repossessed the car knowing (a) the right and title to the car were the subject of litigation, (b) it did not have clear right to possession of the car, (c) the contract was likely to be invalidated and (d) its interest in the car was well protected by plaintiff, who was keeping the car in storage in a locked garage; (2) Ford had filed a detinue action, thereby representing it would not immediately repossess the car; and (3) it broke into plaintiff's garage to repossess the car, an unfair action prohibited by state, federal and common law. Plaintiff also alleged Ford's act of repossession violated public policy because (1) it committed the act when the issue of the car's ownership was pending before a court; (2) it committed a breach of the peace in performing the repossession; and (3) repossession was effectuated in an illegal

19

manner. Plaintiff also alleged Ford and Doe's act of repossession was unethical, immoral, oppressive and unscrupulous, that he suffered substantial damages as a result of the unfair conduct and the conduct was performed in conducting trade or commerce.

The above paraphrased statements comprise the full extent of plaintiff's allegations. Plaintiff does not support his conclusory legal statements that Ford and Doe's conduct was unfair and violated public policy with any well-pleaded factual allegations. Even taking the few factual allegations as true and making inferences therefrom, we find plaintiff's bare bones allegations lack the particularity and specificity necessary to support a cause of action for breach of section 2 of the Consumer Fraud Act. The court did not err in dismissing count IV of plaintiff's second amended complaint.

For the reasons stated above, we affirm the trial court's dismissal of counts IV, V and VI of plaintiff's second amended complaint. We reverse the court's dismissal of count I and remand for further proceedings.

Affirmed in part and reversed in part; cause remanded.

THEIS, P.J., and CUNNINGHAM, J., concur.