136 Nev., Advance Opinion 33

# IN THE COURT OF APPEALS OF THE STATE OF NEVADA

JAMES H. DROGE, AN INDIVIDUAL;
AND CYNTHIA DROGE, AN
INDIVIDUAL,
Appellants,
vs.
AAAA TWO STAR TOWING, INC., A
NEVADA CORPORATION; DONALD
SHUPP, AN INDIVIDUAL; ZANE
INVESTIGATIONS, INC., A NEVADA
CORPORATION; MARK A. ZANE, AN
INDIVIDUAL; AND KRISTAL M.
ROMANS, A/K/A CRYSTAL ROMANS,
AN INDIVIDUAL,
Respondents.

No. 75206-COA

FILED

JUN 18 2020

ELIZABETH A. BROWN
CLERK OF SUPREME COURT
BY
CHIEF DEPUTY CLERK

Appeal from a district court summary judgment in a tort action.
Eighth Judicial District Court, Clark County; William D. Kephart, Judge.

*Affirmed in part, reversed in part, and remanded.*

Stovall & Associates and Ross H. Moynihan and Leslie Mark Stovall, Las Vegas,
for Appellants.

Bremer Whyte Brown & O'Meara, LLP, and Jared G. Christensen and Anthony T. Garasi, Las Vegas,
for Respondents Kristal M. Romans, Mark A. Zane, and Zane Investigations, Inc.

Phillips, Spallas & Angstadt, LLC, and Alyce W. Foshee and Robert K. Phillips, Las Vegas,
for Respondents AAAA Two Star Towing, Inc., and Donald Shupp.

20-22719

BEFORE GIBBONS, C.J., TAO and BULLA, JJ.

*OPINION*

By the Court, BULLA, J.:

Under NRS 104.9609—part of Nevada's version of the Uniform Commercial Code (U.C.C.)—when a default occurs, a secured party who "proceeds without breach of the peace" can take possession of collateral "[w]ithout judicial process." In other words, this statute authorizes a creditor to enter onto private property to attempt to retrieve collateral in what is commonly referred to as a self-help repossession.

In this appeal, the court is asked to consider an issue of first impression—the question of what conduct, undertaken in the course of a self-help repossession of a vehicle, constitutes a breach of the peace, such that the privilege to enter real property without judicial process and retake collateral afforded by NRS 104.9609 no longer applies to those engaged in the repossession effort. We also consider whether appellants can properly base their tort claims on allegations that both a breach of the peace and trespass occurred, even though they did not plead separate claims for such, or indeed a violation of NRS 104.9609. Finally, this court must examine whether summary judgment was warranted with respect to appellants' tort claims in light of our resolution of the above issues.

I.

A.

Russell Droge entered into a loan agreement with JP Morgan Chase Bank, N.A., in connection with his purchase of a Dodge Ram pickup truck. Russell was later incarcerated, and his parents, appellants James and Cynthia Droge (referred to collectively as the Droges where appropriate), agreed to store the truck at their home in Pahrump, Nevada.

Thereafter, the Droges had possession of the truck, which they kept in their fenced backyard. Although the Droges had possession of the collateral, they have never asserted during these proceedings that they are debtors or obligors with respect to the truck or that they have any security interest in the truck.

While incarcerated, Russell defaulted on his loan. Chase retained respondent Zane Investigations, Inc. (Zane), to perform an involuntary repossession of the truck.[1] Zane, in turn, assigned the matter to respondent Kristal Romans, who was Zane's sole employee in Pahrump and in charge of its repossessions.[2] In connection with her assignment to repossess Russell's truck, Romans regularly drove by the Droges' property to assess the feasibility of repossessing the vehicle. Romans was not

---

[1]Because a secured party's duty to carry out self-help repossessions is nondelegable, see U.C.C. § 9-625 cmt. 3 (Am. Law Inst. & Unif. Law Comm'n 2017), secured parties will be held liable for actions taken on their behalf by agents or independent contractors. Courts have likewise permitted claims to proceed against agents or independent contractors for any breach of the peace and resulting tortious conduct that occurs during self-help repossessions. See, e.g., Callaway v. Whittenton, 892 So. 2d 852, 857 (Ala. 2003) (permitting a wrongful repossession claim against a repossession agent to go to the jury on the question of whether the agent breached the peace); Griffith v. Valley of the Sun Recovery & Adjustment Bureau, Inc., 613 P.2d 1283, 1284-86 (Ariz. Ct. App. 1980) (permitting a plaintiff to proceed against a repossession agency with a negligence claim that was based on a breach of the peace theory). Thus, for purposes of this opinion, we do not differentiate between secured parties and their independent contractors.

[2]Zane and Romans are jointly represented in this matter, and they are referred to collectively herein as Romans where appropriate.

immediately able to repossess the truck because it was parked in the Droges' secured backyard.

Several months later, Romans spotted Russell's truck parked in front of the Droges' home on the driveway, which was not fenced and was therefore accessible. However, because Zane does not have its own tow trucks in Pahrump, Romans could not proceed with the repossession by herself. Instead, Romans parked on a nearby street and contacted respondent AAAA Two Star Towing, Inc. (Two Star), which provides Zane with towing services when it repossesses vehicles in Pahrump. Two Star, in turn, dispatched one of its tow truck drivers, respondent Donald Shupp,[3] to meet Romans and tow Russell's truck for Zane. Shupp's training was in the area of towing, but with regard to repossessions, Two Star directed him to follow the repossession agent's instructions, avoid confrontations, and retreat upon demand.

On the day of the attempted repossession, Shupp met Romans on the street where she had parked to assess whether they had an opportunity to repossess the truck. She explained to Shupp that the repossession was involuntary and would be of the "grab-and-go," "no-contact" variety. They then drove to the Droges' property. Romans parked on the street in front of the Droges' house and walked to Russell's truck in the driveway while Shupp backed his tow truck onto the driveway behind Russell's truck.

The parties agree, and the record reflects, that upon entering the Droges' property, Romans confirmed that Russell's truck was the vehicle they were there to repossess by checking its vehicle identification number.

---

[3]Two Star and Shupp are jointly represented in this matter, and they are referred to collectively herein as Shupp where appropriate.

Shupp then lowered his tow truck's flatbed and began chaining Russell's truck to the winch so that the truck could be pulled onto the flatbed. Meanwhile, Cynthia and James Droge, who were in their house, became aware of what was transpiring and went outside to confront Romans and Shupp. At some point during the proceeding events, either one or both of the Droges objected to Romans and Shupp repossessing Russell's truck, although the parties vigorously dispute when this actually took place. But ultimately, the attempted repossession continued until James retrieved the keys to Russell's truck, started it, and moved it into the fenced backyard. Either Romans or Shupp then called 9-1-1.

### B.

The parties do not agree about much else that transpired during the attempted repossession. Indeed, Romans and Shupp maintain that they followed proper procedures during the attempted repossession and that their entry onto the Droges' property was privileged under NRS 104.9609. The Droges, on the other hand, contend that Romans and Shupp breached the peace and thereby forfeited the statute's protections. The parties' positions are based on a number of more specific disputes concerning what happened during the attempted repossession.[4]

For example, the parties disagree whether Romans and Shupp identified themselves and produced the documentation from Chase that authorized them to repossess Russell's truck. The Droges contend that Romans refused Cynthia's request to see her identification and the documentation and instead stepped toward Cynthia in a confrontational

---

[4]Although the parties disagree about what happened during the attempted repossession, the propriety of the time at which it occurred has never been at issue in this case.

manner, proclaiming that she and Shupp were "taking the truck." Romans and Shupp, on the other hand, maintain that, although they were not asked for identification or the documentation, Romans identified herself and explained that they were repossessing Russell's truck, which prompted Cynthia to threaten to call 9-1-1.

The parties also dispute when the Droges objected to Romans and Shupp being on their property in order to repossess the truck, and how Romans and Shupp responded to any objection. According to the Droges, they objected to the repossession as soon as Romans refused to identify herself and produce the repossession order. The Droges further assert that they objected several more times during the incident and that, although Romans eventually walked off of the property and out to the street in front of the Droges' house, Shupp continued with his efforts to attach a chain to the truck until James moved Russell's truck to the backyard and demanded that Shupp leave the property.

According to Romans and Shupp, Cynthia threatened to call the police, which prompted Romans to tell Shupp to hurry up so they could "hook" the vehicle before the Droges told them to leave the property. But Romans and Shupp do not acknowledge any of the Droges' specific objections to the repossession, arguing instead that the first time the Droges demanded that they leave the property was *after* James finished moving Russell's truck into the backyard. Romans and Shupp further maintain that Shupp responded by promptly joining Romans on the street in front of the Droges' house while leaving his tow truck in the Droges' driveway, presumably to be retrieved in the aftermath of the 9-1-1 call that Romans or Shupp subsequently made.

 

Lastly, the parties dispute whether Shupp was struck by Russell's truck while James was attempting to move the vehicle. According to the Droges, James saw that Shupp was working under the back of the truck when James began to move it, but they maintain that James first moved the vehicle forward, which prompted Shupp to stand up and get out of the way, and that James then backed the truck up and proceeded to maneuver the vehicle into the backyard without event. But the Droges acknowledge that, once James parked Russell's truck in the backyard, Shupp stated from the other side of the fence, "[y]ou hit me, man," albeit without further explanation. On the other hand, Romans and Shupp maintain that Shupp was still under the vehicle when James began to back it up, which prompted Romans to scream for Shupp to watch out. This prompted Shupp to look around, but Romans' warning apparently came too late, as Romans and Shupp indicate that Shupp was struck in the chest by the passenger-side rear wheel of Russell's truck. According to Shupp, he would have been crushed if James had backed Russell's truck up another four inches; however, since he was not injured, he was able to scramble out from under the truck while James continued maneuvering the vehicle into the backyard.

## C.

In the aftermath of the failed repossession, a sheriff's deputy responded to the Droges' home. James admitted to the sheriff's deputy that he knew Shupp was on the ground behind Russell's truck when he began to move it. As a result, the sheriff's deputy concluded that James committed battery with a deadly weapon and arrested him. For the same reason, a deputy district attorney decided to charge James with that crime, and the justice court concluded that there was probable cause to bind James over

for trial before the district court. The case proceeded to trial, and the jury ultimately acquitted James.

II.

The Droges subsequently sued Zane, Romans, Two Star, and Shupp, alleging that Romans and Shupp entered their property and trespassed when they failed to leave when asked, that Shupp indicated to the sheriff's deputy that he wanted to press charges against James, and that Romans and Shupp testified against James at his criminal trial.[5] Based primarily on these allegations, the operative complaint included claims for malicious prosecution (solely on James's behalf); negligent hiring, training, and supervision (against Zane and Two Star); negligent infliction of emotional distress (NIED) (solely on Cynthia's behalf); negligent performance of an undertaking (against Zane and Two Star); nuisance (against Romans and Shupp); aiding and abetting; concert of action; intentional infliction of emotional distress (IIED); unreasonable intrusion upon the seclusion of another; and declaratory relief.[6]

Early in the proceeding, Romans moved for summary judgment, but the district court only granted her motion as to James's claim for malicious prosecution and James' and Cynthia's claim for negligent hiring, summarily concluding that they were unable to establish the required elements of those claims. Following discovery, Romans and Shupp each moved for summary judgment on the Droges' remaining claims, arguing,

---

[5]The Droges also sued Zane's owner, Mark A. Zane, but the district court later dismissed their claims against him, and the Droges do not challenge that decision on appeal.

[6]The Droges asserted these claims against each respondent unless otherwise noted.

among other things, that NRS 104.9609 authorized them to enter the Droges' property to repossess Russell's truck; that they did not initiate the prosecution against James; and that they were not the proximate cause of any of the Droges' alleged damages.

The Droges opposed summary judgment, asserting, among other things, that Romans and Shupp failed to leave their property when directed to do so; therefore, Romans and Shupp breached the peace by trespassing and cannot rely on the protections afforded by NRS 104.9609, that Romans and Shupp initiated the criminal proceeding against James, and that they suffered physical and emotional injuries as a result of the attempted repossession and James's subsequent criminal prosecution. Following a hearing, the district court entered a second written order summarily concluding that the Droges could not establish all the required elements of their remaining claims and granted summary judgment against them. The Droges appeal, challenging both summary judgment orders.

### III.

This court reviews a district court's orders granting summary judgment de novo. *Wood v. Safeway, Inc.*, 121 Nev. 724, 729, 121 P.3d 1026, 1029 (2005). Summary judgment is proper when the pleadings and other evidence in the record establish that no genuine issue of material fact exists and that the moving party is entitled to a judgment as a matter of law. *Id.* When evaluating a summary judgment motion, the district court must view all evidence, along with any reasonable inferences drawn from it, "in a light most favorable to the nonmoving party." *Id.* The nonmoving party "may not rest upon general allegations and conclusions, but must, by affidavit or otherwise, set forth specific facts demonstrating the existence of a genuine factual issue." *Id.* at 731, 121 P.3d at 1030-31 (internal quotation marks

omitted). "A factual dispute is genuine when the evidence is such that a rational trier of fact could return a verdict for the nonmoving party." *Id.* at 731, 121 P.3d at 1031.

On appeal, the Droges primarily argue that Romans and Shupp forfeited NRS 104.9609's protections by breaching the peace during the attempted repossession of Russell's truck. They contend that Romans' and Shupp's entry on their property was a trespass because the two would not leave when asked, and therefore, the district court erred in granting summary judgment against them. Further, they argue that their various tort claims, which were underpinned by theories of breach of the peace and trespass, were supported by the evidence and that the district court should not have entered summary judgment against them. Romans and Shupp counter that they did not breach the peace during the attempted repossession, and therefore, their entry on the Droges' property to repossess Russell's truck was privileged under NRS 104.9609.[7] Romans and Shupp further argue that the Droges' amended complaint was deficient in that the Droges failed to prove the requisite elements of their claims, including damages; thus, summary judgment was appropriate.

---

[7]Although not raised in the present case, because it is an important issue, we clarify that a successful repossession is not a prerequisite to a secured party being liable for violating NRS 104.9609. *See Williams v. Republic Recovery Serv., Inc.*, No. 09-cv-6554, 2010 WL 3732107, at *3 (N.D. Ill. Sep. 16, 2010) (concluding that a secured party need not successfully repossess collateral to violate Illinois' self-help repossession statute); *Census Fed. Credit Union v. Wann*, 403 N.E.2d 348, 351-52 (Ind. Ct. App. 1980) ("[E]ven in the attempted repossession of a chattel off a street, parking lot or unenclosed space, if the repossession is verbally or otherwise contested at the actual time of and in the immediate vicinity of the attempted repossession by the defaulting party or other person in control of the chattel, the secured party must desist and pursue his remedy in court.").

## IV.

Before we can evaluate whether the district court erred in granting summary judgment against the Droges on their various tort claims, we must first determine whether Romans and Shupp forfeited the protections afforded by NRS 104.9609 by breaching the peace in their efforts to repossess Russell's truck. Nevada's statute, like its analogue in the U.C.C., does not define the term breach of the peace. *See* U.C.C. § 9-609 cmt. 3 (Am. Law Inst. & Unif. Law Comm'n 2017) (noting that, rather than defining or explaining what conduct constitutes a breach of the peace, U.C.C. § 9-609 leaves that issue for development by the courts). And although the Nevada Supreme Court has recognized that self-help repossessions are permissible, provided that they are performed without a breach of the peace, *see Nev. Nat'l Bank v. Huff*, 94 Nev. 506, 512, 582 P.2d 364, 369 (1978) (citing NRS 104.9609 as originally numbered), the court has yet to define what constitutes a breach of the peace in the context of the U.C.C.

## A.

The term "breach of the peace," however, appears elsewhere in Nevada law. The term is defined in NRS 203.010, a criminal statute that appears under the heading "[b]reach of peace," which makes it a misdemeanor to "maliciously and willfully disturb the peace or quiet of any neighborhood or person or family by loud or unusual noises, or by tumultuous and offensive conduct, threatening, traducing, quarreling, challenging to fight, or fighting." In arguing that they did not breach the peace, Romans and Shupp emphasize that the sheriff's deputy did not cite them for violation of this criminal statute. But while the rules of statutory construction generally permit us to construe a statutory term by looking to

 

how that term is defined elsewhere in Nevada law, *see Poole v. Nev. Auto Dealership Invs., LLC*, 135 Nev. 280, 283-84, 449 P.3d 479, 482-83 (Ct. App. 2019) (construing a statutory term by looking to how that term is defined in similar statutes), applying that approach in the present case would be inapposite to how the Legislature has expressly stated Nevada's U.C.C. should be construed. Indeed, NRS 104.1103(1) directs courts to liberally construe and apply Nevada's U.C.C. "[t]o make uniform the law among the various jurisdictions." *See Newmar Corp. v. McCrary*, 129 Nev. 638, 641, 309 P.3d 1021, 1024 (2013) (recognizing that NRS 104.1103 provides courts guidance with respect to how they should construe Nevada's U.C.C.). As a result, we proceed to examine how other jurisdictions have construed and applied the term "breach of the peace" for purposes of applying their self-help repossession statutes.

B.

Not surprisingly, courts struggle to define the term "breach of the peace" in the context of self-help repossession statutes. Indeed, a breach of the peace has been described as "a legal concept with shifting boundaries not unlike the relatively elastic legal concept of 'probable cause.'" *Hopkins v. First Union Bank of Savannah*, 387 S.E.2d 144, 145 (Ga. Ct. App. 1989). As a result, most courts simply resolve breach-of-the-peace cases without adopting a definition for the term itself, instead focusing on the specific factual circumstances of each case. *See, e.g., Hollibush v. Ford Motor Credit Co.*, 508 N.W.2d 449 (Wis. Ct. App. 1993) (looking to a case's specific factual circumstances without defining the term breach of the peace); *Wade v. Ford Motor Credit Co.*, 668 P.2d 183 (Kan. Ct. App. 1983) (surveying definitions of breach of the peace from extrajurisdictional authorities without adopting them).

Because we agree that breach of the peace is a relatively elastic legal concept, we track the majority approach and decline to adopt an express definition for the term. Instead, we provide workable guidelines to assist courts in determining when a breach of the peace occurs. We initially focus on key general principles that can be gleaned from how other jurisdictions have resolved whether a secured party's conduct rises to the level of a breach of the peace resulting in losing the protections afforded by self-help repossession statutes. We next consider the analytical framework set forth in the Restatement (Second) of Torts, which provides guidance as to when a secured party's conduct will be deemed to constitute a breach of the peace in the self-help repossession context. Finally, we will address the appropriate legal test to be applied in Nevada with respect to this issue.

C.

Because litigation in this area generally involves a narrow set of factual circumstances that routinely arise during self-help repossessions, general principles with respect to what constitutes a breach of the peace are readily discernable from other jurisdictions. For example, courts routinely conclude that a breach of the peace occurs where actual violence or physical resistance is present during a repossession. *See, e.g., Callaway v. Whittenton*, 892 So. 2d 852, 854, 857 (Ala. 2003) (holding that a repossession agent who drove over a debtor's foot and drug him behind a vehicle used physical force to overcome the debtor's resistance and that a jury could therefore find a breach of the peace); *Cottam v. Heppner*, 777 P.2d 468, 472 (Utah 1989) (identifying the potential for violence and the nature of the premises intruded upon as the primary factors for the court's consideration when determining whether a breach of the peace has occurred). However, courts nonetheless widely recognize that violence is not a precondition to a

breach of the peace under self-help repossession statutes. *See, e.g., Chrysler Credit Corp. v. Koontz*, 661 N.E.2d 1171, 1173 (Ill. App. Ct. 1996) (providing that violent conduct is not a necessary element of a breach of the peace and that a probability of violence incident to a repossession is sufficient).

Courts also routinely hold that, even absent physical violence, when a repossession agent crosses physical barriers or destroys personal property in furtherance of a repossession, a breach of the peace occurs. *See, e.g., Davenport v. Chrysler Credit Corp.*, 818 S.W.2d 23, 29-30 (Tenn. Ct. App. 1991) (concluding that a repossession agent breached the peace by entering a closed garage and cutting a padlock). However, courts also recognize that a mere trespass, standing alone, is not a breach of the peace. As a result, courts have been unwilling to subject creditors to liability for removing collateral from debtors' private driveways, provided that they are open. *See, e.g., Butler v. Ford Motor Credit Co.*, 829 F.2d 568, 569-70 (5th Cir. 1987) (affirming a district court's conclusion that a repossession agent did not breach the peace by entering an open private driveway to repossess a vehicle without the use of force). And courts generally take the same approach where creditors repossess collateral from open areas on the property of third parties. *See, e.g., Reno v. Gen. Motors Acceptance Corp.*, 378 So. 2d 1103, 1103-05 (Ala. 1979) (concluding that a repossession agent did not breach the peace when it removed the debtor's collateral from his employer's parking lot).

Courts further routinely conclude that, under self-help repossession statutes, the peace is breached when a repossession proceeds over the objection of the debtor or certain third parties, such as the debtor's family or a person in control of the collateral. *See, e.g., Hollibush*, 508 N.W.2d at 455 (concluding that a secured party's agent breached the peace

when it repossessed a vehicle over the objection of the debtor or her fiancé). However, courts generally recognize that an objection must be made at the time of the repossession to give rise to a breach of the peace. *See, e.g., Chapa v. Traciers & Assocs.*, 267 S.W.3d 386, 395 (Tex. Ct. App. 2008) (recognizing that the secured party must desist when the debtor or other person in control of the collateral objects contemporaneously with and in close proximity to the repossession).[8]

### D.

We next examine the approach set forth in Restatement (Second) of Torts section 198(1) (Am. Law Inst. 1965) in determining what constitutes a breach of the peace. In addition to analyzing the specific circumstances of each case, courts also follow a more structured approach by applying the test from section 198(1) of the Second Restatement, which provides that "[o]ne is privileged to enter land in the possession of another, at a reasonable time and in a reasonable manner, for the purpose of removing a chattel to the immediate possession of which the actor is entitled, and which has come upon the land otherwise than with the actor's consent or by his tortious conduct or contributory negligence."

---

[8]A few courts have essentially held that a breach of the peace does not occur when a repossession proceeds over a mere objection. *See, e.g., Koontz*, 661 N.E.2d at 1174 (reasoning that a self-help repossession statute would be useless if an oral protest alone were sufficient to constitute a breach of the peace). But as observed in *Hollibush*, an objection is a "precursor to violence and . . . it should not be necessary for a debtor to resort to violence" for a breach of the peace to occur. 508 N.W.2d at 455. Because we agree with the *Hollibush* reasoning, we conclude that a mere objection may be sufficient to require a secured party to terminate its repossession efforts so as not to breach the peace.

The Wyoming Supreme Court's decision in *Salisbury Livestock Co. v. Colorado Central Credit Union* provides the best example of this approach. 793 P.2d 470 (Wyo. 1990). In that case, a debtor defaulted on a loan secured by, as relevant here, two vehicles that he stored on a secluded ranch that was owned by a corporation for which he held a partial ownership interest. *Id.* at 471-72, 475. After the secured party's agents repossessed those vehicles from the ranch without notice to the corporation, the corporation sued the secured party and its agents for trespass, and the trial court entered a directed verdict for the defense, reasoning that the agents' conduct was privileged under Wyoming's self-help repossession statute, which is nearly identical to NRS 104.9609. *Id.* at 471-73, 475.

In the subsequent appeal, the *Salisbury* court considered whether the secured party's agents' conduct rose to the level of a breach of the peace for purposes of Wyoming's self-help repossession statute. The *Salisbury* court initially observed that Wyoming's self-help repossession statute was a codification of U.C.C. section 9-503, which has since been renumbered as U.C.C. section 9-609. *Id.* at 473. The *Salisbury* court further explained that U.C.C. section 9-609 itself incorporated a preexisting common law right of extrajudicial repossession, which the court reasoned was expressed in section 198(1) of the Second Restatement.[9] *Id.* In addition, because nothing in Wyoming's self-help repossession statute

---

[9]Given the *Salisbury* court's observation that section 198(1) of the Second Restatement expressed a common law right that predated the U.C.C., it is notable that section 198(1) of the Second Restatement is a substantially unchanged version of Restatement (First) of Torts section 198(1), which the American Law Institute published in 1934, nearly two decades before the Uniform Commercial Code, with its breach of the peace standard, was offered to the states for adoption. *See* U.C.C. § 9-503 (Am. Law Inst. & Unif. Law Comm'n 1951 Final Text Edition).

indicated that the Wyoming Legislature intended to deviate from the common law, the *Salisbury* court adopted the Second Restatement's reasonableness test for purposes of determining when a secured party's conduct during a self-help repossession rises to the level of a breach of the peace. *Id.* at 474. For further support, the Wyoming Supreme Court reasoned that this approach would effectively balance the secured party's right to enforce its security interest through self-help with society's interest in tranquility and the right of those who are not parties to a security agreement to be free from unwanted invasions of their land. *Id.* at 474-76.

Consistent with the general principles discussed above, the *Salisbury* court further explained that, in applying the Restatement's reasonableness test, the primary factors a court should consider are the potential for violence and the nature of the premises intruded upon, since the potential for violence increases as the proximity to a dwelling, particularly a secluded one, decreases. *Id.* at 474-75. Thus, because the underlying repossession took place in a rural setting on a third party's property without notice to the third party, the *Salisbury* court concluded that a jury needed to determine whether there was a real possibility of immediate violence, such that the repossession was not reasonable in time and manner and, therefore, resulted in a breach of the peace. *Id.* at 475. Accordingly, the *Salisbury* court overturned the directed verdict for the secured party and its agents on the corporation's trespass claim and remanded the matter for a jury to evaluate whether a breach of the peace occurred. *Id.* at 471.

V.

With the foregoing in mind, we turn to how Nevada courts should evaluate breach of the peace in the self-help repossession context,

including when applying NRS 104.9609. In support of their argument that Romans and Shupp breached the peace during the attempted repossession, the Droges argue that this court should follow the Wyoming Supreme Court's approach in *Salisbury* by adopting the Restatement's reasonableness standard. While Romans and Shupp disagree with respect to whether a breach of the peace occurred, they follow the Droges' lead in framing their argument in terms of whether they acted reasonably during the attempted repossession.

In considering whether to adopt the Restatement's reasonableness standard, we initially note that self-help repossession is recognized to be an inherently dangerous activity. *See, e.g., Ford Motor Credit Co. v. Ryan*, 939 N.E.2d 891, 927 (Ohio Ct. App. 2010). However, secured parties nevertheless have an interest in enforcing their security interests through self-help when debtors default. As a result, the self-help repossession statutes that derive from U.C.C. section 9-609 authorize secured parties to engage in a repossession if it can be done without a breach of the peace. In this way, self-help repossession statutes protect the interest of not only the secured party, but also the debtor and the general public. *See* U.C.C. § 9-601 cmt. 2 (Am. Law Inst. & Unif. Law Comm'n 2017) (explaining that U.C.C. § 9-609 limits a secured party's ability to enforce its security interest in order to "protect[ ] the defaulting debtor, other creditors, and other affected persons"). Indeed, these authorities strive

> (1) to benefit creditors in permitting them to realize collateral without having to resort to judicial process; (2) to benefit debtors in general by making credit available at lower costs; and (3) to support a public policy discouraging extrajudicial acts by citizens when those acts are fraught with the likelihood of resulting violence.

*Clarin v. Minn. Repossessors, Inc.*, 198 F.3d 661, 664 (8th Cir. 1999) (internal quotation marks omitted); *see also Giles v. First Va. Credit Servs., Inc.*, 560 S.E.2d 557, 565 (N.C. Ct. App. 2002). Consequently, the overriding goal for any test for determining whether conduct constitutes a breach of the peace must be to balance the stated objectives of self-help repossessions while minimizing the potential for violence by providing debtors and creditors with clear guidance as to when a breach of the peace occurs. *Clarin*, 198 F.3d at 664 (reasoning that, because secured parties, debtors, and the public have competing interests in the self-help repossession context, those interests must be balanced when determining what constitutes a breach of the peace); *see also Salisbury*, 793 P.2d at 475-76 (recognizing the importance of balancing the secured party's interest in a self-help remedy with society's interest in tranquility and the right of third parties to be free from unwanted invasions of their land).

We agree with the Wyoming Supreme Court that an effective means of balancing the competing interests that arise in the self-help repossession context is provided by the Second Restatement's requirement that self-help repossessions be conducted at a reasonable time and in a reasonable manner. Moreover, because NRS 104.9609 does not express a legislative intent to deviate from the common law right to extrajudicial repossession that predated the U.C.C., we agree with the Wyoming Supreme Court that applying the Second Restatement's reasonableness standard to determine when a breach of the peace occurs is particularly appropriate. *See Branch Banking & Tr. Co. v. Windhaven & Tollway, LLC*, 131 Nev. 155, 158, 347 P.3d 1038, 1040 (2015) (providing that Nevada's appellate courts "presume that a statute does not modify common law unless such intent is explicitly stated"); Restatement (First) of Torts

Introduction (Am. Law Inst. 1934) (explaining that the Restatement was published "to present an orderly statement of the general common law of the United States"); *see also Salisbury*, 793 P.2d at 473 (reasoning that the Restatement reflects the common law of extrajudicial repossession and adopting the Restatement's reasonableness standard since Wyoming's self-help repossession statute did not include an expression of legislative intent to deviate from the common law). Indeed, the Restatement's reasonableness standard has been adopted, or at least tacitly endorsed, by several other jurisdictions aside from Wyoming. *See, e.g., Giles*, 560 S.E.2d at 565-66 (looking to the reasonableness of the time and manner of a repossession based on the Restatement but also applying a multifactor balancing test to aid the court's analysis).

Based on the reasoning articulated above, we adopt the Restatement's reasonableness standard and conclude that self-help repossessions must be conducted at a reasonable time and in a reasonable manner and that a breach of the peace occurs when a secured party fails to satisfy either or both of these obligations.[10] Moreover, given that the U.C.C.

---

[10]Although we adopt the reasonableness factors articulated in the Second Restatement, we reject the suggestion, in comments h and i to section 198, that breaking and entering and the use of force are acceptable in the self-help repossession context. Allowing such conduct is incompatible with the U.C.C.'s objective of discouraging violence in the course of self-help repossessions. *Clarin*, 198 F.3d at 664. We likewise decline to adopt comment d to section 198, which generally requires a secured party to provide the debtor with notice before it would be reasonable to enter the property to recover collateral. While the provision of notice may be relevant in assessing the reasonableness of a repossession in some circumstances, requiring a secured party to provide notice is unduly restrictive and is likely to undermine the secured parties' ability to carry out self-help

essentially codifies the common law right to extrajudicial repossession reflected in the Restatement, as the *Salisbury* court recognized, 793 P.2d at 473, we hold that a breach of the peace occurs when a self-help repossession or attempted repossession under NRS 104.9609 is undertaken in an unreasonable time or manner or both. And because the Nevada Legislature has directed that NRS 104.9609 be liberally construed "[t]o make uniform the law among the various jurisdictions," NRS 104.1103(1), we also direct Nevada courts to consider the key general principles regarding what constitutes a breach of the peace that were discussed above in applying this reasonableness test.[11] *See supra* § IV(C). These general principles, gleaned

---

repossessions. *See Everett v. U.S. Life Credit Corp.*, 327 S.E.2d 269, 269-70 (N.C. Ct. App. 1985).

[11]Although reasonableness is generally a question of fact for the jury, a district court may nevertheless resolve a breach of the peace issue in the self-help repossession context prior to trial when it is clear that a reasonable jury could only reach one possible conclusion. *See Lee v. GNLV Corp.*, 117 Nev. 291, 296-97, 22 P.3d 209, 212-13 (2001) (explaining, in the context of a negligence claim, that reasonableness is usually a factual question for the jury but that summary judgment may nevertheless be warranted if a claim fails as a matter of law (citing W. Page Keeton et al., *Prosser and Keeton on the Law of Torts* § 37, at 237 (5th ed. 1984) ("It is possible to say, in many cases, that the conduct of the individual clearly has or has not conformed to what the community requires, and that no reasonable jury could reach a contrary conclusion."))). Consistent with this approach and Nevada's summary judgment standard, the existence of disputed issues of material fact is necessarily determinative of whether breach of the peace issues in the self-help repossession context can be resolved by the district court on summary judgment or whether these issues should go to the jury. *Compare Clarin*, 198 F.3d at 664 (affirming the entry of summary judgment against the plaintiff on a wrongful repossession claim that was based on a breach of the peace theory), *with Salisbury*, 793 P.2d at 475 (reversing a directed

from cases analyzing specific instances of conduct as discussed above, should not be disregarded merely because we have adopted the Restatement's reasonable time and manner requirements. Indeed, because these principles stem from a common understanding of the factual circumstances that tend to arise in self-help repossessions, courts should be guided by these general principles when evaluating the reasonableness of a secured party's conduct.[12]

## VI.

Having determined that a breach of the peace occurs when a secured party acts at a time or in a manner that is not reasonable during a self-help repossession, we now consider whether genuine issues of material fact remain with respect to whether Romans' and Shupp's conduct breached the peace during the attempted self-help repossession. We note that we are not addressing the timing of the attempted repossession in the present case, as the Droges have never argued that it occurred at an unreasonable time. Instead, we focus on the *manner* of the attempted repossession. In this respect, the evidence in the record—particularly the parties' deposition testimony—when taken in the light most favorable to the Droges, reveals

---

verdict on a trespass claim for the jury to consider whether the secured party's agent breached the peace).

[12]We recognize that other jurisdictions have used different analytical frameworks to determine when a secured party's conduct rises to the level of a breach of the peace in the self-help repossession context. *See, e.g., Clarin*, 198 F.3d at 664 (balancing five factors in considering whether a breach of the peace occurred). Nevertheless, we conclude that the Restatement's reasonableness test, when applied in conjunction with the key general principles discussed above, provides the best-reasoned approach for resolving breach of the peace issues in the self-help repossession context.

that factual disputes remain between the parties concerning almost everything that transpired during the attempted repossession. *Wood v. Safeway, Inc.*, 121 Nev. 724, 729, 121 P.3d 1026, 1029 (2005) (explaining that, in the context of a motion for summary judgment, the evidence must be viewed in the light most favorable to the nonmoving party). Indeed, the parties disagree about when the Droges objected to the repossession and how Romans and Shupp responded to their objections, as well as whether the attempted repossession concluded with James striking Shupp with Russell's truck. Moreover, the parties dispute whether Romans behaved aggressively and failed to identify herself during the attempted repossession.

Each of these factual disputes is material to the general principles discussed above and raise the broader question as to whether Romans and Shupp failed to act in a reasonable manner and thereby breached the peace. *See id.* at 731, 121 P.3d at 1031 (stating that the substantive law determines which factual disputes are material, and, therefore, preclude summary judgment). Thus, genuine issues of material fact remain as to whether Romans and Shupp breached the peace, and as a result, the district court erred to the extent that it granted them summary judgment based on a contrary conclusion rather than permitting the trier of fact to evaluate those issues. *Id.* at 729, 121 P.3d at 1029.

VII.

The foregoing does not end our analysis, however, because Romans and Shupp further assert that the Droges failed to plead breach of the peace and trespass as separate claims below, and therefore the issues are not properly before this court. The Droges do not dispute that they did not expressly plead separate claims for breach of the peace and trespass in

their amended complaint. Instead, they argue that the issues are properly before us since "breach of the peace" and "trespass" underpin their claims for NIED, negligent training and supervision, negligent performance of an undertaking, IIED, unreasonable intrusion upon the seclusion of another, nuisance, concert of action, aiding and abetting, and punitive damages, as well as Romans' and Shupp's defenses thereto. In particular, the Droges contend that they may establish certain elements of their tort claims by demonstrating that Romans and Shupp breached the peace during the attempted repossession and thereby forfeited NRS 104.9609's protections.

A.

The Droges' argument in this regard raises the issue of whether a plaintiff may seek redress for a breach of the peace by bringing tort claims, as the Droges did here, even though Article 9 of Nevada's U.C.C. provides for a private cause of action arguably encompassing the conduct at issue here. Specifically, NRS 104.9625 makes "a person . . . liable for damages in the amount of any loss caused by a failure to comply with . . . [A]rticle [9]." When a plaintiff brings a claim under NRS 104.9625 that is premised on a secured party breaching the peace in violation of NRS 104.9609, the plaintiff is essentially asserting a wrongful repossession claim. *See, e.g., Clarin*, 198 F.3d at 663 (referring to a claim arising from a secured party's alleged breach of the peace as a cause of action for wrongful repossession under the U.C.C.); 42 Am. Jur. 3d *Liability of Creditor and Repossession Agent for Wrongful Repossession and Tortious Acts Committed During Repossession* § 355 (1997) (explaining that a self-help repossession is wrongful if any one of the following elements are missing: "(1) the creditor must have a security interest in the property repossessed; (2) the debtor must be in default; (3) the creditor's actions must be in conformance with

its contract with the debtor; and (4) the repossession must occur without a 'breach of the peace'" (footnotes omitted)).

But pursuant to NRS 104.9625(3), this statutory wrongful repossession claim is only available to debtors, obligors, and holders of security interests or other liens on collateral.[13] And because the Droges do not contend that they fall within any of these categories, there is no indication that they are eligible claimants under the statute. *See* NRS 104.9102(1)(bb), (fff) (defining the terms "debtor" and "obligor" for purposes of Nevada's U.C.C.). This is likely why the parties failed to either address or even identify this issue below. But a question remains as to whether the statute's remedy is nonexclusive, such that the Droges may maintain common law tort claims based on the same type of conduct that would give rise to a claim under NRS 104.9625, such as a violation of NRS 104.9609.

Based on our review of extrajurisdictional authority as well as the comments to U.C.C. section 9-625 and other secondary sources, we conclude that Nevada's self-help repossession statute is not an exclusive remedy. This conclusion is consistent with other courts, which widely recognize that statutes based on U.C.C. section 9-625 are nonexclusive. *See,*

---

[13]The comments to U.C.C. section 9-625 (Am. Law Inst. & Unif. Law Comm'n 2017), which corresponds to NRS 104.9625 and provides persuasive authority with respect to the interpretation of Nevada's U.C.C, *see Edelstein v. Bank of N.Y. Mellon*, 128 Nev. 505, 523, 286 P.3d 249, 261 (2012) (citing the official comments to the U.C.C. as persuasive authority), confirm this interpretation of NRS 104.9625(3). *See* U.C.C. § 9-625 cmt. 3 (providing that subsection (c) of U.C.C. § 9-625, which corresponds to NRS 104.9625(3), identifies who may assert a claim deriving from the provision); NRS 104.9625(3) (setting forth damages that are available under NRS 104.9625(2) to a person who "at the time of [a violation of Article 9] was a debtor, was an obligor or held a security interest in or other lien on the collateral").

*e.g.*, *Davenport v. Chrysler Credit Corp.*, 818 S.W.2d 23, 31 (Tenn. Ct. App. 1991) (explaining that Tennessee's equivalent to the predecessor of U.C.C. § 9-625 was not exclusive, but rather, was cumulative to other remedies available under state law); *Gen. Elec. Credit Corp. v. Timbrook*, 291 S.E.2d 383, 385 (W. Va. 1982) ("[I]f repossessions result in breaches of the peace, creditors are responsible for any torts they commit."); *Whisenhunt v. Allen Parker Co.*, 168 S.E.2d 827, 831 (Ga. Ct. App. 1969) (explaining that, although a repossession agency had a right to peacefully repossess a vehicle, it was "responsible for any tortious acts committed during the repossession"). And although courts generally do not elaborate on this point, they frequently permit plaintiffs to present individual tort claims premised on alleged breaches of the peace. *See, e.g.*, *Mauro v. Gen. Motors Acceptance Corp.*, 626 N.Y.S.2d 374, 377 (N.Y. Sup. Ct. 1995) (permitting plaintiffs to proceed with assault and battery claims against a secured party based on the conduct of its independent contractor during a repossession); *Smith v. John Deere Co.*, 614 N.E.2d 1148, 1154-55 (Ohio Ct. App. 1993) (permitting plaintiffs to proceed with trespass and negligence claims that were based on a breach of the peace theory).

Further support for our conclusion that NRS 104.9625's private cause of action is nonexclusive can be found in comment 3 to U.C.C. section 9-625. That comment initially clarifies that, although U.C.C. section 9-625(b), like NRS 104.9625(2), states that persons eligible to bring wrongful repossession claims deriving from U.C.C. section 9-625 may recover damages for "any loss" resulting from a secured party's noncompliance with Article 9, the provision only supports the recovery of actual damages since it is intended to create a mechanism to "put an eligible claimant in the position that [the claimant] would have occupied had no

violation occurred." U.C.C. § 9-625 cmt. 3. But the comment further provides that U.C.C. section 9-625 is supplemented by "principles of tort law." *Id.* Moreover, the comment indicates that double recoveries are prohibited "to the extent that damages in tort compensate the debtor for the same loss dealt with by . . . [Article 9]," *id.*, which is telling for the present purposes since a double recovery would not be possible unless the underlying tort and wrongful repossession claims were both premised on a breach of the peace.

The clarification provided by this comment has led one legal scholar to observe that the U.C.C. anticipates eligible claimants being able to recover damages in tort for violations of Article 9, with the secured party's potential liability only being limited by the nature and number of tort claims in the relevant jurisdiction. *See* 4 James J. White et al., *Uniform Commercial Code* § 34:44 (6th ed. 2015). The principle significance of this dual claim approach is that debtors may recover punitive damages by way of tort claims that are unavailable through a statutory claim under statutes deriving from U.C.C. section 9-625. *Id.*

Thus, we conclude that U.C.C. section 9-625 as codified in NRS 104.9625 is not an exclusive remedy for debtors to seek recovery of damages for a wrongful repossession. Given that debtors and other eligible claimants are not limited to statutory damages, parties who are *not* entitled to statutory damages, like the Droges, should also be afforded the opportunity to plead tort claims to seek recovery based on a breach of the peace theory, as the Droges did here. And although Nevada courts have not expressly addressed this issue, other courts have permitted parties similarly situated to the Droges to do exactly that. For example, while the court in *Griffith v. Valley of the Sun Recovery & Adjustment Bureau, Inc.*, concluded that an

innocent bystander who was shot during a self-help repossession could not establish negligence per se based on a violation of a self-help repossession statute, the court further explained that the secured party was responsible for any torts committed during the repossession and that a jury question remained as to whether the secured party was liable for negligence based on the "explosive atmosphere" created during the repossession, which is essentially a breach of the peace theory. 613 P.2d 1283, 1284-86 (Ariz. Ct. App. 1980). Likewise, in *Salisbury Livestock Co. v. Colorado Central Credit Union*, 793 P.2d 470, 471, 475 (Wyo. 1990), the court permitted a corporate plaintiff that stored a debtor's vehicle on its property to proceed with a trespass claim against a secured party defendant based on a breach of the peace theory.

Based on the foregoing analysis, we conclude that NRS 104.9625 does not provide an exclusive remedy for injuries stemming from a breach of the peace during a self-help repossession. *See* NRS 104.1103(1) (providing that Nevada's U.C.C. should be liberally construed and applied "[t]o make uniform the law among the various jurisdictions"); *Newmar Corp. v. McCrary*, 129 Nev. 638, 641, 309 P.3d 1021, 1024 (2013) (recognizing that NRS 104.1103 provides guidance for how to construe Nevada's U.C.C.). Thus, regardless of whether a plaintiff is entitled to bring a claim under NRS 104.9625, the plaintiff may seek to recover through tort-based claims arising from an alleged breach of the peace.

B.

A question remains, however, as to whether the Droges alleged sufficient facts to state claims based on their breach of the peace and trespass theories in light of the reasonable time and manner standard that we adopted above as well as Nevada's liberal notice pleading standard. *W.*

*States Constr., Inc. v. Michoff*, 108 Nev. 931, 936, 840 P.2d 1220, 1223 (1992) (explaining that, because Nevada is a notice-pleading state, courts in Nevada "liberally construe pleadings to place into issue matters which are fairly noticed to the adverse party" (internal quotation marks omitted)). This standard "requires plaintiffs to set forth the facts which support a legal theory, but does not require the legal theory relied upon to be correctly identified." *Liston v. Las Vegas Metro. Police Dep't*, 111 Nev. 1575, 1578, 908 P.2d 720, 723 (1995) (footnote omitted). "A plaintiff who fails to use the precise legalese in describing his grievance but who sets forth the facts which support his complaint thus satisfies the requisites of notice pleading." *Id.*

In the instant case, the Droges alleged in their complaint that Romans and Shupp entered their property and refused to leave when told to do so, and they described these actions as a trespass in their pleadings. For purposes of Nevada's notice-pleading standard, such allegations provide sufficient notice that the Droges sought to recover damages for Romans and Shupp breaching the peace and trespassing on their land during the attempted repossession. *See id.* (holding that notice to the defending party is adequate when a complaint "set[s] forth sufficient facts to demonstrate the necessary elements of a claim for relief[,]" such that the "nature of the claim and relief sought" are apparent); NRCP 8(a)[14] (requiring that

---

[14]The Nevada Rules of Civil Procedure were amended effective March 1, 2019. *See In re Creating a Comm. to Update & Revise the Nev. Rules of Civil Procedure*, ADKT 0522 (Order Amending the Rules of Civil Procedure, the Rules of Appellate Procedure, and the Nevada Electronic Filing and Conversion Rules, December 31, 2018). The amendments do not affect the disposition of this appeal, however, because they were enacted after the district court entered the challenged orders. Nonetheless, we note that we cite the prior version of the rules herein.

pleadings contain "a short and plain statement of the claim showing that the pleader is entitled to relief").

Indeed, the Droges' allegations demonstrated that they would seek to prove that Romans and Shupp acted in an unreasonable manner during the attempted repossession, which as discussed above, is what the Droges must establish to demonstrate that a breach of the peace occurred. *See* Restatement (Second) of Torts § 198(1) ("One is privileged to enter land in the possession of another, at a reasonable time and in a reasonable manner, for the purpose of removing a chattel . . . ."). Specifically, the Droges' allegations support that they sought to recover for Romans' and Shupp's failure to leave their property when asked, which is what the Droges must establish to demonstrate trespass in the breach of the peace context. *See Lied v. Cty. of Clark*, 94 Nev. 275, 279, 579 P.2d 171, 173-74 (1978) (providing that a trespass claim requires the invasion of a property right). And these allegations were not mere background information in the Droges' amended complaint that could easily be overlooked, but instead, the allegations formed the basis for the vast majority of the claims in their case. This is presumably why Romans and Shupp have defended against the Droges' claims, both below and on appeal, by asserting that their conduct was privileged under NRS 104.9609, and why they conducted discovery relevant to these issues below.[15]

---

[15]Romans even retained a repossession expert who opined as to what constitutes a breach of the peace for purposes of NRS 104.9609. Overall, given Romans' and Shupp's topics of inquiry during discovery, it appears that they both recognized that breach of the peace and trespass were at issue in this case.

Thus, given that NRS 104.9625 is nonexclusive and that the facts in the Droges' complaint were sufficient to satisfy Nevada's notice-pleading standard with respect to their breach of the peace and trespass theories, we conclude that the Droges properly stated tort claims based on these theories.[16] In deciding this, we specifically distinguish this case from *Sprouse v. Wentz*, 105 Nev. 597, 602, 781 P.2d 1136, 1139 (1989), where the plaintiff did not plead wrongful repossession and the supreme court concluded that, although he pleaded relevant "scattered facts" in the context of his other claims, those facts were insufficient to give notice of a wrongful repossession cause of action. Here, the facts contained in the Droges' complaint relevant to breach of the peace and trespass were not "scattered," but indeed formed the underpinnings of all of the Droges' tort claims. To be sure, these facts were so engrained in the Droges' complaint that, under Nevada's notice-pleading standard, the Droges' allegations concerning the attempted self-help repossession are sufficient to maintain common law claims for wrongful repossession based on a breach of the peace and for trespass, notwithstanding the fact that the Droges did not label them as separate claims in their complaint. As a result, Romans' and Shupp's assertion that the issues of breach of the peace and trespass are not properly before this court fails.

---

[16]As an additional basis for our conclusion that NRS 104.9625 did not preclude the Droges from embedding their breach of the peace and trespass theories in these claims, we note that Romans and Shupp have never argued that NRS 104.9625 is an exclusive remedy, and as a result, they waived any such argument. *See Old Aztec Mine, Inc. v. Brown*, 97 Nev. 49, 52, 623 P.2d 981, 983 (1981) ("A point not urged in the trial court . . . is deemed to have been waived and will not be considered on appeal."); *see also Powell v. Liberty Mut. Fire Ins. Co.*, 127 Nev. 156, 161 n.3, 252 P.3d 668, 672 n.3 (2011) (providing that arguments not raised on appeal are waived).

## VIII.

We next turn to the question of whether summary judgment was warranted on the entirety of the Droges' amended complaint, even though, as discussed above, genuine issues of material fact remain regarding whether Romans and Shupp breached the peace during the attempted repossession.

### A.

As a preliminary matter, we point out that the district court failed to set forth the undisputed material facts and legal determinations on which it relied in reaching its decision to grant summary judgment. *See* NRCP 56(c) (requiring summary judgment orders to include "the undisputed material facts and legal determinations" on which the district court relied); *see also ASAP Storage, Inc. v. City of Sparks*, 123 Nev. 639, 656-57, 173 P.3d 734, 746 (2007) (reversing and remanding a portion of a district court order granting summary judgment because it did not set forth the undisputed material facts and legal determinations supporting the court's decision). Nevertheless, because one of the Droges' tort claims fails as a matter of law, and since the Droges have waived any challenge to the summary judgment on certain of their other tort claims, we affirm the entry of summary judgment on those claims.

### B.

We affirm the summary judgment against the Droges on the negligent hiring portion of their negligent hiring, training, and supervision claim and the portion of James's malicious prosecution claim that was directed at Romans, as the Droges have expressly waived any challenge to those decisions on appeal. We also affirm the summary judgment on the Droges' claim for negligent performance of an undertaking, as the Droges



failed to meaningfully address Romans' and Shupp's arguments in support of the district court's decision on this claim in either their opening or reply briefs, and as a result, they waived any challenge thereto. *See Colton v. Murphy*, 71 Nev. 71, 72, 279 P.2d 1036, 1036 (1955) (concluding that when respondents' argument was not addressed in appellants' opening brief, and appellants declined to address the argument in a reply brief, "such lack of challenge cannot be regarded as unwitting and in our view constitutes a clear concession by appellants that there is merit in respondents' position").

Finally, with respect to the Droges' claim for NIED, which they asserted on Cynthia's behalf, we affirm the summary judgment in Romans' and Shupp's favor. Where a defendant's negligence causes a third party's death or serious injury, and a plaintiff who is related to the third party perceives the death or serious injury and suffers emotional distress causing physical manifestations as a result, the plaintiff may recover for NIED. *See State, Dep't of Transp. v. Hill*, 114 Nev. 810, 815, 963 P.2d 480, 483 (1998), *overruled on other grounds by Grotts v. Zahner*, 115 Nev. 339, 341, 989 P.2d 415, 416 (1999). In this case, there is no evidence James suffered any injury during the attempted repossession efforts. Therefore, Cynthia could not have suffered any emotional distress as a result, and summary judgment was appropriate on this claim.

## C.

With the exception of the foregoing, we reverse summary judgment as to the remainder of the Droges' tort claims. Again, the deficiencies in the district court's summary judgment orders prevent us from fully considering the propriety of the court's decisions with respect to these remaining claims. *See* NRCP 56(c); *ASAP Storage*, 123 Nev. at 656-57, 173 P.3d at 746. Nonetheless, as discussed above, the record

Court of Appeals
of
Nevada

(O) 1947B

demonstrates that genuine issues of material fact remain with respect to the breach of the peace and trespass theories that underpin the Droges' claims, including questions concerning when the Droges objected to the attempted repossession, how Romans and Shupp responded to the objection, and whether the attempted repossession resulted in a violent incident. And insofar as the district court entered summary judgment based on a determination that no genuine issues of material fact remained on the breach of the peace issue, its decision was erroneous.[17]

## D.

Despite our decision to reverse the summary judgment on the Droges' remaining claims, we take this opportunity to provide guidance on three of these claims. Although summary judgment was warranted with respect to the Droges' NIED claim, the same is not true of the Droges' IIED claim, which differs from NIED claims in that a plaintiff need not establish that he or she apprehended a relative's death or serious injury to recover for the emotional distress caused by a defendant's extreme and outrageous

---

[17]While Romans and Shupp vociferously defend the summary judgment in their favor by asserting that the Droges did not suffer physical injury damages, it is notable that the Droges have tort claims for which physical injury damages are not a requirement. For example, by way of their trespass claim, the Droges can pursue nominal damages or even damages for annoyance and discomfort. *See Land Baron Invs., Inc. v. Bonnie Springs Family Ltd. P'ship*, 131 Nev. 686, 700, 356 P.3d 511, 521 (2015) (recognizing that a plaintiff asserting a trespass claim may recover damages for annoyance and discomfort); *Parkinson v. Winniman*, 75 Nev. 405, 408, 344 P.2d 677, 678 (1959) (concluding that a nominal damages award was appropriate in the context of a trespass claim).

conduct.[18] *Compare Hill*, 114 Nev. at 815, 963 P.2d at 483 (discussing the elements of a NIED claim, including the requirement that the plaintiff "apprehend[ ] the death or serious injury of a loved one" (emphasis and internal quotation marks omitted)), *with Olivero v. Lowe*, 116 Nev. 395, 398, 995 P.2d 1023, 1025 (2000) (setting forth the elements of an IIED claim). Under the facts and circumstances of this case, questions of fact remain as to the extremeness and outrageousness of Romans' and Shupp's conduct during their repossession efforts and the Droges suffering extreme emotional distress as a result.

With respect to the Droges' malicious prosecution claim that was asserted on James's behalf against Shupp, a defendant may be liable for malicious prosecution if criminal proceedings were commenced based on the defendant's "direction, request, or pressure," unless the prosecutor made an independent determination to commence the criminal proceeding. *See Lester v. Buchanen*, 112 Nev. 1426, 1429, 929 P.2d 910, 913 (1996) (internal quotation marks omitted). This independent determination rule does not apply, however, if the defendant did *not* believe the information provided to authorities to be true since "an intelligent exercise of the officer's discretion [is] impossible" when a witness knowingly provides false

---

[18]Additionally, although a plaintiff must suffer a physical manifestation of his or her emotional distress to prevail on an NIED claim, the supreme court has recognized that a plaintiff is not necessarily required to establish a physical manifestation to state an IIED claim, provided that the defendant's conduct is sufficiently extreme and outrageous. *See Chowdhry v. NLVH, Inc.*, 109 Nev. 478, 483, 851 P.2d 459, 462 (1993) (comparing and contrasting the physical manifestation requirement of NIED and IIED claims and observing that, in the context of an IIED claim, "[t]he less extreme the outrage, the more appropriate it is to require evidence of physical injury or illness from the emotional distress" (alteration in original) (internal quotation marks omitted)).

information. Restatement (Second) of Torts § 653 cmt. g (Am. Law Inst. 1977); *see also Lester*, 112 Nev. at 1429, 929 P.2d at 912-13 (applying the Second Restatement's approach to malicious prosecution claims and providing that a defendant is only shielded by the independent determination rule if the defendant provided information that he or she believed to be true). And because the parties dispute whether James hit Shupp with Russell's truck, this raises the possibility that Shupp falsely reported that James did so, when he knew this not to be true. Thus, genuine issues of material fact remain with respect to whether the district attorney could intelligently exercise discretion to prosecute James in a manner that would shield Shupp from liability.

Finally, turning to the Droges' claim for punitive damages, we note that punitive damages is a remedy, not a cause of action. 22 Am. Jur. 2d *Damages* § 567 (2013) ("[A]s a rule, there is no cause of action for punitive damages by itself; a punitive-damage claim is not a separate or independent cause of action." (footnote omitted)). However, if the Droges can establish that Romans and Shupp acted with oppression, fraud, or malice during the attempted repossession, then they may be able to recover punitive damages. *See Bongiovi v. Sullivan*, 122 Nev. 556, 581, 138 P.3d 433, 450-51 (2006) (providing that punitive damages may be awarded to a plaintiff who establishes by clear and convincing evidence that the defendant acted with "oppression, fraud or malice, [either] express or implied" (internal quotation marks omitted)); *see also Wolf v. Bonanza Inv. Co.*, 77 Nev. 138, 143, 360, P.2d 360, 362 (1961) (reasoning that, without a judgment for actual damages, a judgment for exemplary damages cannot be valid).

## IX.

In sum, pursuant to NRS 104.9609, secured parties may carry out self-help repossessions on private property provided that they do so without breaching the peace. A breach of the peace occurs when a secured party performs a self-help repossession that is not reasonable in time or manner. To determine whether a repossession is reasonable in time or manner, courts should consider the general principles set forth in this opinion, as they reflect a common understanding among jurisdictions as to what conduct rises to the level of a breach of the peace.

In the present case, genuine issues of material fact remain for the trier of fact with respect to almost everything about the attempted repossession, including whether the Droges objected to the attempted repossession from the outset and whether the attempted repossession resulted in violence. Thus, taking the facts of this case in the light most favorable to the Droges, the district erred to the extent that it concluded that the factual circumstances did not constitute a breach of the peace and trespass as a matter of law when, as reflected in the general principles set forth above, a trier of fact could conclude otherwise based on the disputed facts.

Finally, we affirm the entry of summary judgment against the Droges on their claims for malicious prosecution (against Romans only), negligent hiring, negligent performance of an undertaking, and NIED because these claims have either been waived by the Droges or fail as a matter of law. However, with respect to the Droges' remaining claims, genuine issues of material fact remain. Thus, we reverse the entry of

 

summary judgment on these claims and remand for further proceedings consistent with this opinion.

_____, J.
Bulla

We concur:

_____, C.J.
Gibbons

_____, J.
Tao